## ENGLAND NAT. BANK v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. June 23, 1922.)

No. 5652.

1. **Banks and banking ⊂⇒154(8)—Evidence held to show that drawer received canceled checks.**

In an action by drawer of checks against bank for paying, on January 27, checks on which the payee's names were forged, evidence *held* to show that drawer received these checks from bank, with statement, on or before the following February 4.

2. **Banks and banking ⊂⇒154(7)—Custom of delivering statements to depositors evidence of delivery in particular case.**

The usage and custom of a bank in delivering statements and canceled checks to its depositors was competent evidence to prove the fact of delivery of particular canceled checks.

3. **Banks and banking ⊂⇒148(4)—Depositor, by failing to give notice of forged checks, discharged bank from liability.**

Where the payee's names on two checks were changed by drawer's agent, and the checks showed no evidence of this change to an experienced cashier exercising reasonable care, and bank returned the canceled checks to drawer within a week after they were cashed, and drawer at that time discovered the forgery, but did not give bank notice of it until six months later, meanwhile seizing all property of defaulting agent, bank was discharged from liability for paying these checks.

4. **Banks and banking ⊂⇒151—Bank's duty to furnish depositor with statement.**

On request of a depositor, it is the bank's duty to furnish him with a statement of his account, accompanied by his canceled checks.

5. **Banks and banking ⊂⇒151—Depositor's failure to examine statement, and notify bank of error, admission of account's correctness.**

A failure by depositor to examine his statement and canceled checks, and notify bank of any error in his account, or defective checks, within a reasonable time after receiving them, is a conclusive admission of the account's correctness.

6. **United States ⊂⇒89—Recovery from bank paying defective checks barred by officer's negligence.**

The failure of an officer of the United States to notify a bank of payment of forged checks within a reasonable time after receiving them pre-

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

vented the United States from recovering from bank, for when a government quits its position of sovereignty and enters the domain of commerce it submits itself to the same laws that govern individuals.

In Error to the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Action by the United States against the England National Bank. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions to grant a new trial.

H. M. Trieber, of Little Rock, Ark. (John M. Moore, H. M. Armistead, Ashley Cockrill, G. De Matt Henderson, and John W. Newman, all of Little Rock, Ark., on the brief), for plaintiff in error.

June P. Wooten, U. S. Atty., of Little Rock, Ark. (W. A. Utley, Asst. U. S. Atty., of Benton, Ark., on the brief), for the United States.

Before SANBORN and LEWIS, Circuit Judges, and VAN VALKENBURGH, District Judge.

SANBORN, Circuit Judge.  The record in this case portrays the proceedings in the trial of an action by the United States against the England National Bank to recover $6,205.49 and interest, on the ground that the bank paid and charged to the plaintiff's account the latter's checks, numbered 24 and 25, in each of which the name of the payee had been changed after the checks had been lawfully signed, on behalf of the plaintiff by Col. D. W. Ryther, "Mess Fund, 348th Inf., D. W. Ryther, Col. 348th Inf. Com'd'g." The most important questions in the case relate to the charge of the court at the close of the trial.  To determine them it is necessary to consider the state of the evidence at that time.  There was substantial and preponderant evidence in the case of these facts:

The two checks, 24 and 25, were dated, signed by Col. Ryther, and delivered to Robert H. Hall, the first lieutenant of the 348th Infantry on January 8, 1918, to deliver to the payees named therein in satisfaction of their claims for supplies which the plaintiff had purchased from them.  Check 24 was for $3,557.15, and was payable to the order of "Scott-Mayer Com. Co."  Check 25 was for $2,648.34, and was payable to the order of Swift & Co.  The numbers, dates, amounts, and the names of the payees in these checks appeared in the stubs thereof, which have been in a check book in the possession of the plaintiff ever since the checks were drawn.  Lieut. Hall had charge of the Mess Fund and of two other mess funds, purchased the supplies, kept the account, drew the checks, but he had no authority to sign the checks on the Mess Fund of the 348th Inf. on deposit in the bank.  He had, however, signatory powers over two other funds deposited therein; that of the "Mess Officer, 348th Inf.," and that of the "Headquarters Mess, 348th Inf."  With erasing fluid he removed the name of the payee in each of the two checks, wrote in the place of "Scott-Meyer Com. Co." in check 24 "Headquarters Mess, 348th Inf.," then indorsed that name on the back of the check; wrote in the place of Swift & Co. in check 25 "Mess Officer, 348th Inf.," then indorsed that name on the back of that check, obtained the money on

the checks by depositing them in accounts in other banks than the plaintiff's, whence he could draw it out, secured the money on the checks, and absconded. He had written the two checks originally, and Col. Ryther had simply signed them, so that the handwriting of the substituted names of the payees was the same as that of the written amounts therein, and they passed through the banks and were paid by the plaintiff without exciting any suspicion that there had been any change in them after they were signed by Col. Ryther. Nor was there any evidence introduced in the case that there was anything about either of the checks to excite the suspicion of or give notice to an experienced cashier or teller that the name of the payee therein had been changed. Check 24 was paid by the defendant on January 27, 1918, and check 25 was paid by it on January 28, 1918. This action was commenced on September 27, 1918.

One of the defenses pleaded by the bank in its answer was that after it paid these checks it caused a statement of the account of the "Mess Fund 348th Inf." to be made, which showed all the items of debits and credits entering into that account, including the amounts of checks 24 and 25, and caused that statement and all the paid checks referred to in that account, including checks 24 and 25, to be delivered to Col. D. W. Ryther as the agent and representative of the plaintiff, requested that he examine them and report any error therein, and notified him that if no error was reported within 10 days after their delivery the account would be considered correct; that neither Col. Ryther nor the plaintiff notified the defendant of any alteration, fraud, or defect in connection with either of the two checks, and it was thereby prevented from protecting itself against loss, on account of its payment thereof, until it was too late for it to do so. At the close of the evidence the defendant requested the court to charge the jury that, if they found that a statement of the account of the "Mess Fund 348th Inf." was rendered by the defendant to the depositor or any one representing it, accompanied by the canceled checks referring thereto, including checks 24 and 25, about February 1, 1918, that no objection was made to the statement, to the balance shown or to the paid checks thereon by the depositor, and that no notice was given to the bank that any error had been made in the account, or that the two checks, or either of them, had been altered or changed, then they should return a verdict for the defendant, and that upon the question whether or not such a statement was rendered the testimony regarding the usage and custom of the bank in making and delivering such statements to its depositors was competent, and the jury might take into consideration the testimony of the officers of the bank in regard thereto. The court refused this request, and charged the jury that, if they found that at the time Col. Ryther signed the checks they were filled out, one payable to "Scott-Mayer Com. Co." and the other payable to Swift & Co., and that, after he had signed and delivered them to Lieut. Hall, the latter altered them by erasing or removing the names of the payees and substituting other names, the plaintiff was entitled to the verdict, thereby withdrawing from the jury all other questions of

fact. To this charge, and to the court's refusal to give the charge it requested, the bank excepted, and it assigns these rulings as error.

[1] The refusal of the instruction requested by the defendant presents two questions: First, was there any substantial, competent evidence that the bank sent or delivered the statement of account and canceled checks to the plaintiff? and, second, if it did so, would that fact, and the other facts of which there was substantial evidence, if they had been found by the jury, have constituted a defense to this action, and have entitled the defendant to a verdict in its favor?

The assistant cashier of the bank at the time of these transactions testified that it was the custom of the bank, if a depositor asked for a statement of his account, to make one showing the account at the time he requested it, and the balance, to accompany this account with the paid checks referring to the items therein, and, if the depositor requested it, to mail this statement and the checks to him; that the bank had two clerks in charge of making these statements in 1918, that he was unable to say which one of these clerks made the statement in this case, and that no one remembered; that the bank never sent out canceled checks, except in connection with a statement of account; and that the records of the bank showed that a statement of the account of "Mess Fund 348th Inf." was made up at the close of business on January 28, 1918, and another up to the close of business on March 9, 1918. He also testified that about the 5th or 6th of February, 1918, he was informed that there was something wrong with the account, and that he stopped payment on it for a few days on the request of the plaintiff, and then resumed payment, but that he never received any notice that checks 24 and 25, or any other check on the "Mess Fund 348th Inf." which the bank had paid, had been changed, or of any fraud or deceit in any of them, or of any mistake or error in the account, until a few days before this suit was commenced in September, 1918.

The president of the bank testified that he never received any notice that checks 24 or 25, or any other checks, on the "Mess Fund 348th Inf. which the bank had paid, had been changed, or were fraudulent or in any way defective, until a few days before this action was brought in September, 1918. He further testified that it was the custom of the bank to make a notation on its record when a statement of account was made for a depositor, in order to designate that it had been sent, that that was the only method the bank pursued, and that its record showed that a statement of the account of "Mess Fund 348th Inf." was sent out about February 1, 1918, and another on March 9, 1918. There was no evidence that any other officer or agent of the bank received any such notice.

There was uncontradicted testimony that checks 24 and 25 were in the possession of the plaintiff at the trial of Lieut. Hall about the 1st day of May, 1918, that they were delivered to the plaintiff before March 9, 1918, that Capt. Zeb Ward, who succeeded Lieut. Hall in charge of the three mess funds, showed checks 24 and 25 about the 3d of February, 1918, to Mr. J. W. House, Jr., who was the attorney for Capt. Ward and others in an action which they brought against

Lieut. Hall on February 4, 1918, to recover moneys Hall had wrongfully obtained by the use of one of these checks. There was no evidence that the plaintiff, or Capt. Ward, or any of the officers or agents of the plaintiff, obtained the two paid checks in any other way than by receiving them with the bank's statement of account up to the close of business on January 28, 1918.

[2] None of the testimony which has been recited was challenged on the ground that the books of the bank were the best evidence of that which the records showed, and the evidence which has been recited was not only substantial, but convincing, that on or before February 4, 1918, when Capt. Zeb Ward and others commenced their action again Lieut. Hall, the plaintiff had received the bank's statement of account up to the close of business on January 28, 1918, and the paid checks, including checks 24 and 25, pertinent to that account. The result is that that part of the requested instruction, to the effect that the testimony as to the usage and custom of the bank in making and delivering statements to its depositors was competent for the purpose of proving the fact that its statement of account of the "Mess Fund 348th Inf." accompanied by the checks, was rendered about February 1, 1918, and that in considering that question the jury would take into consideration the testimony of the officers of the bank, was pertinent and correct, and should have been given. We turn to the second question.

[3] None of the officers or employés of the bank had any suspicion of the changes in the checks or received any notice thereof until some time in September, 1918. Each of the two checks passed through one bank before it came to the defendant and was paid. Neither of them excited any suspicion or gave any notice of the change in the name of the payee therein. There was, as has been shown, substantial and convincing evidence that after the checks were paid on the 27th and 28th days of January, 1918, and before February 5, 1918, the defendant made and delivered to the plaintiff its statement of account of the "Mess Fund 348th Inf." and checks 24 and 25, which showed that it had paid these checks and that it had charged the amount of them to that account. It was the duty of the plaintiff to examine and verify the account, and if it discovered that the bank had paid and charged the account with these checks when it was not warranted in so doing, because they had been wrongfully changed, it was its duty immediately to notify the bank of that fact, so that it could protect itself by recovering the amount it had paid of Hall, or in some other way. The plaintiff had the means at hand to determine whether or not the checks had been changed, and the bank had no such means. The plaintiff had the stubs of checks 24 and 25, which were numbered 24 and 25, and which disclosed the amount of each check, that check 24 had been drawn payable to Scott-Mayer Commission Company and that check 25 had been drawn payable to Swift & Co. A comparison of the checks with the stubs at once disclosed the fraud. No witness testified that the plaintiff or any of its officers or agents compared these checks with the stubs and discovered the change in them, but the fact that Capt. Ward, who succeeded Lieut. Hall in charge of the "Mess

Fund 348th Inf." and of the other mess funds, showed these checks in the early days of February to his attorney, who brought an action on February 4, 1918, against Hall to recover money he had obtained by the use of one of them, leaves no doubt that the plaintiff knew in the early days of February, 1918, that the checks had been wrongfully changed by Lieut. Hall and that the bank had paid them. Nevertheless, it gave no notice to the bank of this change in the checks nor did the bank learn of it until September, 1918.

Meanwhile the plaintiff and its officers, not without its knowledge, pursued Lieut. Hall, his property, and his credits, and took to themselves from him and them property of the value of at least $3,561.24, an automobile and a diamond ring, and the bank at the trial claimed and offered to prove, but the court refused it permission, that they obtained other property of the value of $5,000. A part of this property appears to have been taken on account of the alleged loss to "Mess Fund 348th Inf." and a part on account of losses to the other two mess funds, but it was all taken with the knowledge and active direction of Capt. Ward, who succeeded Lieut. Hall in the charge of the three funds.

The result is that there was substantial and preponderant evidence at the trial of this case that the names of the payees in the two checks were changed by Lieut. Hall, to whose possession as its agent and officer the plaintiff intrusted them to deliver to their payees; that the checks bore no notice of the change of the payees to an experienced cashier or teller exercising reasonable care when the bank paid them; that the bank made a statement of the account of the "Mess Fund 348th Inf." up to the close of business on January 28, 1918, and caused it and the paid checks relating to it, including checks 24 and 25, to be delivered to the plaintiff on or before February 4, 1918; that the plaintiff discovered that the payee's names in the checks had been changed by Lieut. Hall and that he had absconded with their proceeds as early as February 4, 1918; that it gave to the bank no notice that either of the checks had been changed, or that there had been any other defect in or fraud in connection with them,. or that the bank had erred in paying or charging them, until some time in September, 1918, more than six months after the plaintiff had discovered the change in the checks; and that meanwhile it and its officers had seized and taken all the property of Lieut. Hall, amounting to $3,500, so that it was then too late for the bank to protect itself. And, in this state of the case at the close of the trial, the conclusion is that the court below restricted too much the jury's field of inquiry. It should have submitted to them the questions whether or not they found the respective facts, which we have stated that there was substantial preponderant evidence to prove, and it should have instructed them that, if they found the existence of such facts, they would return a verdict for the defendant.

[4, 5] It is the duty of a bank, upon the request of a depositor thereof, to furnish him with a statement of the account, and to accompany that statement with the checks it has paid as vouchers for such payments. It is the duty of a depositor, who receives such a

statement and such paid checks, within a reasonable time to examine them, to ascertain whether or not the account is correct, and whether or not the paid checks are just and legal vouchers for the amounts charged on the account of them, and, immediately upon the discovery of any error in the account, or any fraudulent altered or defective paid check or voucher, to notify the bank thereof, in order that it may at once proceed to protect itself before others exhaust the property of the wrongdoer who caused the loss; and the negligence or failure of the depositor to make the examination within a reasonable time, or speedily to notify the bank after his discovery of an altered, defective, or fraudulent check or voucher, is in law a conclusive admission of the correctness of the account and the legality and justice of the vouchers, upon which the bank has the right to rely, and which the depositor may not consequently deny. Leather Manufacturers' Bank v. Morgan, 117 U. S. 96, 106, 107, 108, 109, 110, 112, 113, 115, 6 Sup. Ct. 657, 29 L. Ed. 811; United States Bank v. Bank of Georgia, 10 Wheat. 333, 343, 6 L. Ed. 334; Robb v. Vos, 155 U. S. 13, 39, 40, 15 Sup. Ct. 4, 39 L. Ed. 52; First Nat. Bank v. Farrell (C. C. A.) 272 Fed. 371, 376, 16 A. L. R. 651; Citizens' B. & T. Co. v. Hinkle, Adm'r, 126 Ark. 266, 277, 189 S. W. 679. These rules of law were discussed, considered, and established in the courts of the United States in the case first cited in 1886, and they have since been repeatedly affirmed and followed in a long line of decisions too numerous to cite.

[6] If the suggestion presents itself that the laches or negligence of the officers or agents of the United States in this matter are not imputable to it, the answer is that, while this rule may prevail in cases in which the nation is protecting or enforcing its right as a sovereign, "still," as Chief Justice Waite said in Cooke v. United States, 91 U. S. 389, 398 (23 L. Ed. 237), "a government may suffer loss through the negligence of its officers. If it comes down from its position of sovereignty, and enters the domain of commerce, it submits itself to the same laws that govern individuals there. Thus, if it becomes the holder of a bill of exchange, it must use the same diligence to charge the drawers and indorsers that is required of individuals, and, if it fails in this, its claim upon the parties is lost. United States v. Barker, 12 Wheat. 559. Generally, in respect to all the commercial business of the government, if an officer specially charged with the performance of any duty, and authorized to represent the government in that behalf, neglects that duty, and loss ensues, the government must bear the consequences of his neglect." See, also, United States v. Bank of the Metropolis, 40 U. S. (15 Pet.) 377, 392, 393, 10 L. Ed. 774.

The bank has specified other errors, but they relate to questions not likely to arise in the second trial pursuant to the views expressed in this opinion, and their discussion is therefore omitted. Let the judgment below be reversed, and let this case be remanded to the court below, with directions to grant a new trial.