ROGERS & COMPANY v. EAST CAROLINA RAILWAY, ATLANTIC COAST
    LINE RAILROAD COMPANY AND JAMES C. DAVIS, AGENT, UNITED
    STATES RAILROAD ADMINISTRATION.

(Filed 19 September, 1923.)

**Commerce—Railroads—Carriers of Goods—Bills of Lading—Federal
    Statutes—Contracts—Invalid Agreement—Notice of Claim—Limita-
    tion of Actions.**

> The stipulations in a bill of lading accepted by the consignee in inter-
> state commerce for a transportation over connecting lines of carriage,
> and accepted by the Interstate Commerce Commission, among other
> things, requiring that when there is a loss of shipment by the carrier,
> written notice must be given to either the ·originating or terminal
> carriers within six months after a reasonable time for delivery has
> elapsed, and suits for loss or damage in such case must be brought within
> two years and one day, are reasonable and valid under the provisions
> of the Carmack Amendment to the· Federal statute controlling in such
> matters, and constitute the sole contract of carriage between the parties,
> without power on their part to extend the time of such notice or the
> bringing of the action.

APPEAL by plaintiff from *Kerr, J.,* at June Term, 1923, of EDGE-
COMBE.

The plaintiffs alleged that on 28 September, 1918, they delivered
through their agent to the East Carolina Railway at Macclesfield five
bales of cotton for shipment to Norfolk; that this railway issued to the
plaintiffs, as consignees, a through bill of lading of standard form,
agreeing to carry and deliver the cotton to a connecting carrier; that
the shipment was carried over the line of the East Carolina Railway
from Macclesfield to Tarboro, and from Tarboro over the Coast Line to
Norfolk, and was lost in transit. The damage was alleged to be $851.57,
with interest from 9 October, 1918.

All the defendants filed answers, denying the material allegations of
the complaint and setting up special defenses.

The verdict was as follows:

"1. Did the defendant, the East Carolina Railway Company, receive
from the plaintiff the five bales of cotton referred to in the complaint,
and did it contract to carry the same from Macclesfield, N. C., to the
consignee in Norfolk, Va., on a through bill of lading, as alleged?
Answer: 'Yes.'

"2. Did the defendants fail to transport and deliver the said cotton
to the consignee in accordance with this contract? Answer: 'Yes.'

"3. Did the loss occur on the East Carolina Railway? Answer:
'Yes.'

"4. Did the loss occur on the Atlantic Coast Line Railroad? An-
swer: 'No.'

"5. What damage, if any, is plaintiff entitled to recover for loss of said cotton? Answer: '$634.81.'

"6. When was the claim for said cotton filed with the delivering carrier? Answer: '27 August, 1919.'

"7. When was the action to recover said loss begun? Answer: '27 February, 1922.'

"8. Did the Coast Line Railroad have a custom and agreement with the consignee of cotton at Norfolk, Va., that claims for loss should not be filed until the end of the cotton year, in order that it might make delivery? Answer: 'Yes.'

"9. Is this action barred by the statute of limitations? Answer: 'Yes.'"

The fourth, sixth, and seventh issues were answered by consent, and the ninth, with the assent of the parties, was answered by the court as a legal conclusion arising from the answers to all the preceding issues. By consent, judgment was rendered in favor of the Atlantic Coast Line and James C. Davis, agent, and upon the verdict in favor of the East Carolina Railway. From the latter judgment the plaintiffs appealed.

*Don Gilliam* for the appellant.
*John L. Bridgers* for appellee.

ADAMS, J. The cotton was shipped on 28 September, 1918. The loss occurred on the line of the East Carolina Railway. The claim for loss was filed with the Atlantic Coast Line on 27 August, 1919, and suit was instituted on 27 February, 1922.

The bill of lading contains these provisions: "Except where the loss, damage, or injury complained of is due to delay or damage while being loaded or unloaded, or damaged in transit by carelessness or negligence, as conditions precedent to recovery, claims must be made in writing to the originating or delivering carrier within six months after delivery of the property, or in case of failure to make delivery, then within six months after a reasonable time for delivery has elapsed; and suits for loss, damage, or delay shall be instituted only within two years and one day after delivery of the property, or in case of failure to make delivery, then within two years and one day after a reasonable time for delivery has elapsed."

A witness for the plaintiffs testified that ten days was a reasonable time in which to transport the cotton from Macclesfield to Norfolk, and as there was no evidence to the contrary, we presume the plaintiffs adhere to the statement. Therefore, according to the stipulation in the bill of lading, claim for loss should have been filed within six months after the lapse of such reasonable time for transportation and delivery. *Georgia, etc., Railway Company v. Blish Milling Company,* 241 U. S., 190.

The plaintiffs say that the provision for filing written notice of the claim was rendered ineffective and unenforceable by the answer to the eighth issue; but it will be noted that, so far as it relates to this controversy, the custom referred to affected only the consignees and the terminal carrier. There is no finding by the jury that the initial carrier was a party to, or even had knowledge of, such a custom or agreement; and the plaintiffs' argument is rested on the assumption that the Atlantic Coast Line Company was the agent of the initial carrier, and, as such, had power to bind its principal by the alleged custom. We cannot concur with the plaintiffs in this conclusion.

By virtue of the Carmack Amendment, delivery to and acceptance by the shipper of an interstate bill of lading constitutes it a binding contract on his part as to the valid provisions therein, although he has not, by any act, other than the acceptance of the bill, signified his assent to the written stipulations; and it has been held that the provision with respect to giving the notice is valid. *Boston & Maine R. R. v. Hooker,* 233 U. S., 97; *Railway Company v. Blish Milling Co., supra; Railway v. Starbird,* 243 U. S., 592; *Bryan v. R. R.,* 174 N. C., 177; *Aman v. R. R.,* 179 N. C., 310.

It is equally conclusive, we think, that the provisions in the bill of lading cannot be waived by the parties to the contract of shipment. *Railway Company v. Starbird, supra; Railway Company v. Blish Milling Company, supra.* In *Texas & Pacific Railway Company et al. v. Leatherwood,* 250 U. S., 478, it was decided that the parties to an interstate bill of lading cannot waive its terms; that the carrier cannot by its conduct give the shipper a right to ignore them; and that "a different view would antagonize the plain policy of the act and open the door to the very abuses at which the act was aimed." There, *Mr. Justice Brandeis* said: "The bill of lading given by the initial carrier embodies the contract for transportation from point of origin to destination; and its terms in respect to conditions of liability are binding upon the shipper and upon all connecting carriers, just as a rate properly filed by the initial carrier is binding upon them. Each has in effect the force of a statute of which all affected must take notice."

"The true ground upon which the written bill of lading must be held to control the rights of the parties," said *Brown, J.,* in *Bryan v. R. R., supra,* "is founded on the Carmack Amendment to the Interstate Commerce Act. That amendment requires the carrier to issue a bill of lading, the terms of which are fixed by the Interstate Commerce Commission, whereby such contracts are made uniform through the United States. The defendant has no authority to enter into any other contracts."

Accordingly, the custom alleged to have been recognized by the consignees and the terminal carrier, as shown in the answer to the eighth

issue, was ineffectual as a waiver of the written stipulation relating to the filing of the plaintiffs' claim of loss.

There is another circumstance which is fatal to recovery by the plaintiffs. The parties stipulated in the bill of lading that suit for loss should be instituted within two years and one day after the lapse of a reasonable time for the delivery of the cotton. U. S. Compiled Statutes, sec. 8604-a, and amendments. There is nothing in the Carmack Amendment which prohibits this agreement; in fact, similar agreements for a much shorter period have been held to be reasonable. In *Railway Company v. Harrimon,* 227 U. S., 657, there was a stipulation in the shipping contract that no suit should be brought after the lapse of ninety days from the happening of the loss or damage, and in an opinion sustaining the stipulation *Mr. Justice Lurton* used this language: "The liability sought to be enforced is the 'liability' of an interstate carrier for loss or damage under an interstate contract of shipment declared by the Carmack Amendment of the Hepburn Act of 29 June, 1906. The validity of any stipulation in such a contract which involves the construction of the statute, and the validity of a limitation upon the liability thereby imposed, is a Federal question, to be determined under the general common law, and, as such, is withdrawn from the field of State law or legislation." *Adams Exp. Co. v. Croninger,* 226. U. S., 491; *Michigan C. R. Co. v. Vreeland,* 227 U. S., 59. "The liability imposed by the statute is the liability imposed by the common law upon a common carrier, and may be limited or qualified by special contract with the shipper, provided the limitation or qualification be just and reasonable, and does not exempt from loss or responsibility due to negligence." *Adams Express Company v. Croninger, and Michigan C. R. Co. v. Vreeland,* cited above; *York Mfg. Co. v. Illinois C. R. Co.,* 3 Wall, 107; 18 L. Ed., 170; *New York C. R. Co. v. Lockwood,* 17 Wall, 357; 21 L. Ed., 627; *Southern Exp. Co. v. Caldwell,* 21 Wall, 264, 267; 22 L. Ed., 556, 558; *Hart v. Penn. R. Co.,* 112 U. S., 331; 28 L. Ed., 717.

"The policy of statutes of limitation is to encourage promptness in the bringing of actions, that the parties shall not suffer by loss of evidence from death or disappearance of witnesses, destruction of documents, or failure of memory. But there is nothing in the policy or object of such statutes which forbids the parties to an agreement to provide a shorter period, provided the time is not unreasonably short. That is a question of law for the determination of the court."

The amended statute forbids a common carrier to provide, by rule, contract, regulation, or otherwise, any period less than two years for the institution of suits. In the instant case the limitation was fixed by contract at two years and a day. The suit was not brought until after

the lapse of this period, whether the time be computed from 27 August, 1919, as contended by the plaintiffs, or from the expiration of "a reasonable time" for delivery after 28 September, 1918, as contended by the defendant. In either event the plaintiffs' action is barred.

We find no error in the record which entitles the plaintiffs to a new trial.

No error.