## UNITED STATES v. SEABOARD AIR LINE RY. CO.

Circuit Court of Appeals, Fourth Circuit.
October 22, 1927.

No. 2505.

**1. Carriers ⬅153—Government bill of lading held to incorporate by reference usual requirement that suits for loss be instituted within two years and one day.**

Government bill of lading, providing that, unless otherwise specifically provided therein, it was subject to same rules and conditions as govern commercial shipments under carrier's usual forms, incorporated as condition thereof a provision of carrier's usual bill of lading requiring suits for loss, damage, or delay to be instituted within two years and one day after delivery of the property, or after a reasonable time for delivery has elapsed, in absence of any contrary provision therein.

**2. United States ⬅70(1)—Bill of lading, to which government is party, is governed by same rules as contracts between individuals.**

In the construction and interpretation of government contracts, the same general rules apply as apply to contracts between individuals, and bill of lading to which government is party will therefore be construed as other contracts.

**3. Carriers ⬅160—As respects intrastate shipment before Transportation Act, bill of lading, requiring suits for loss, damage, or delay to be brought within two years and one day, held valid (Transportation Act 1920, § 438 [49 USCA § 20, par. 11]).**

As respects intrastate shipment before enactment of Transportation Act 1920, § 438 (49 USCA § 20, par. 11 [Comp. St. § 8604a]), provision of a bill of lading requiring suits for loss, damage, or delay to be instituted within two years and one day after delivery of property, or after a reasonable time for delivery has elapsed, in case of failure to make delivery, is valid.

**4. Limitation of actions ⬅11(1)—Statutes of limitations do not apply to government, unless expressly made applicable to it.**

Statutes of limitations do not apply to the government, unless expressly made applicable to it.

**5. United States ⬅133—Suit by government as sovereign to enforce public right or assert public interest is not barred by laches of its officers.**

Suit by government as a sovereign to enforce a public right or to assert a public interest is not barred by laches of its officers, however gross.

**6. United States ⬅133—Bill of lading provision requiring suits for loss to be brought within two years and one day barred recovery by government after that time.**

Requirement that suits for loss or damages to shipment be brought within two years and one day after delivery, or after reasonable time for delivery has elapsed, incorporated in government bill of lading by contract, was binding on government, and government's counterclaim

22 F.(2d)—8

for loss of part of shipment, not brought within the time specified, was barred.

In Error to the District Court of the United States for the Eastern District of Virginia, at Norfolk; D. Lawrence Groner, Judge.

Action by the Seaboard Air Line Railway Company against the United States. Judgment for plaintiff, and the United States brings error. Affirmed.

Howard W. Ameli, Sp. Asst. Atty. Gen. (Herman J. Galloway, Asst. Atty. Gen., Paul W. Kear, U. S. Atty., of Norfolk, Va., and O. R. McGuire, of Washington, D. C., on the brief), for the United States.

James G. Martin, of Norfolk, Va. (James F. Wright, of Norfolk, Va., on the brief), for defendant in error.

Before PARKER, Circuit Judge, and SOPER and ERNEST F. COCHRAN, District Judges.

PARKER, Circuit Judge. This was a suit under the Tucker Act (24 Stat. 505), brought by the Seaboard Air Line Railway Company, to recover a balance of $505.56, admittedly due, from the United States for services rendered in the carriage of goods in the year 1922. The answer of the United States pleaded by way of counterclaim or set-off that the railway company owed it a similar amount for the loss in September, 1917, during transportation, of 10 boxes of army slickers and other clothing belonging to the United States. The answer was filed November 30, 1925, more than eight years after the loss alleged. The District Judge held that, because the United States had not filed claim for the loss within six months, and had not brought suit within two years and a day, it was not entitled to recover on the counterclaim asserted, and gave judgment in favor of the railway company for the full amount of its demand. From this judgment the United States has appealed, and the only question presented is the right to recover on the counterclaim.

It appears that the shipment of goods out of which the claim of the United States arises was delivered to the railway company at Raleigh, N. C., for transportation to Wadesboro, N. C., on September 11, 1917. Shortly thereafter a portion of the goods was delivered at Wadesboro; but goods embraced in the shipment to the value of $505.-56 were short, and were never delivered. At the time of the delivery at Wadesboro the officer of the Army who accepted delivery noted the shortage on the bill of lading; but

no other claim in writing was filed with regard thereto until the 6th day of May, 1921, and no action for loss or damage was instituted against the company until the filing of the answer herein on the 30th day of November, 1925.

The property was shipped under a government bill of lading, which contained the following provision under the heading "Instructions," viz.:

"6. In case of loss or damage to property while in the possession of the carrier, such loss or damage shall, when practicable, be noted on the bill of lading before its accomplishment. All practicable steps shall be taken at that time to determine the loss or damage and the liability therefor, and to collect and transmit to the proper officer, without delay, all evidence as to the same. Should the loss or damage not be discovered until after the bill of lading has been accomplished, the proper officer shall be notified as soon as the loss or damage is discovered, and the agent of the carrier advised immediately of such loss or damage, extending privilege of examination of shipment."

Preceding the "Instructions," and under the heading "Conditions," appeared the following:

"It is mutually agreed and understood between the United States and carriers who are parties to this bill of lading that * * *

"2. Unless otherwise specifically provided hereon, this bill of lading is subject to the same rules and conditions as govern commercial shipments made on the usual forms provided therefor by the carrier."

Among the rules and conditions prescribed by the usual form of bill of lading, provided by the carrier, is the following:

"Except where the loss, damage, or injury complained of is due to delay or damage while being loaded or unloaded, or damaged in transit by carelessness or negligence, as conditions precedent to recovery claims must be made in writing to the originating or delivering carrier within six months after delivery of the property or in case of failure to make delivery, then within six months after a reasonable time for delivery has elapsed; and suits for loss, damage or delay shall be instituted only within two years and one day after delivery of the property, or, in case of failure to make delivery, then within two years and one day after a reasonable time for delivery has elapsed."

[1] Assuming, without deciding, that the notation of loss of goods on the government bill of lading was a sufficient compliance with the requirement as to filing of claim in writing, whether the provision of the government bill of lading or the uniform commercial bill of lading govern as to this matter, we think that the judgment of the District Court in favor of the railway company was correct, as it is admitted that suit was not instituted on the claim of the government within the time prescribed by the conditions of the "usual form" of bill of lading provided by the carrier. As above noted, the government bill of lading expressly provides that, "unless otherwise specifically provided hereon, this bill of lading is subject to the same rules and conditions as govern commercial shipments made on the usual forms provided therefor by the carrier"; and the trial judge has found as a fact that the "usual forms" provided by the carrier for commercial shipments contain the conditions above quoted, among them being the condition that "suits for loss, damage, or delay shall be instituted only within two years and one day after delivery of the property, or, in case of failure to make delivery, then within two years and one day after a reasonable time for delivery has elapsed." There is nothing in the government bill of lading which provides anything contrary to this condition, and there can be no question that the provision of that bill of lading which we have quoted incorporates it as a condition of the contract of shipment as fully as if it were printed on the government bill of lading itself. 13 C. J. 530; 6 R. C. L. 857; Donlon v. Southern Pac. Co., 151 Cal. 763, 91 P. 603, 11 L. R. A. (N. S.) 811, 12 Ann. Cas. 1118; Guerini Stone Co. v. Carlin Const. Co., 240 U. S. 264, 36 S. Ct. 300, 60 L. Ed. 636; Minnesota Tribune Co. v. Associated Press (C. C. A. 8th) 83 F. 350.

[2] The fact that the government is a party to the bill of lading does not prevent the application of the rule that matters referred to by a contract will be treated as though incorporated therein; for the rule is well settled that in the construction and interpretation of government contracts the same general rules apply as in the case of contracts between individuals. 26 R. C. L. 1437; Hollerbach v. U. S., 233 U. S. 165, 34 S. Ct. 553, 58 L. Ed. 898; U. S. v. Bostwick, 94 U. S. 53, 24 L. Ed. 65.

[3] There might be some question as to the validity of the condition contained in the commercial bill of lading, if this were a shipment in interstate commerce, made after the passage of the Transportation Act of 1920 (41 Stat. 456, 494 [49 USCA § 20, par. 11; Comp. St. § 8604a]). Louisiana & Western R. Co. v. Gardiner, 273 U. S. 280, 47 S. Ct.

386, 71 L. Ed. 644. But, as the shipment was made in intrastate commerce and prior to the passage of the Transportation Act, the decision in the Gardiner Case can have no application, and no question arises as to the validity of the condition. On the contrary, the validity of such conditions, when not contravening some statutory prohibition, has been repeatedly upheld. Leigh Ellis & Co. v. Davis, 260 U. S. 682, 43 S. Ct. 243, 67 L. Ed. 460; Mo., K. & T. R. Co. v. Harriman, 227 U. S. 657, 33 S. Ct. 397, 57 L. Ed. 690; Rogers & Co. v. East Carolina Ry., 186 N. C. 86, 118 S. E. 885; Holmes & Dawson v. East Carolina Ry., 186 N. C. 58, 118 S. E. 887; Thigpen v. East Carolina Ry., 184 N. C. 33, 113 S. E. 562; Hafer v. St. Louis, etc., Ry., 101 Ark. 310, 142 S. W. 176, Ann. Cas. 1913E, 866, and note at 868.

[4-6] As the condition relied upon by the railroad company was valid, therefore, and as it was incorporated in the contract of shipment by reference in the government bill of lading, only one question remains for consideration: Is it binding upon the government? We think that it is. We recognize the rule, of course, that statutes of limitation do not apply to the government unless expressly made applicable to it, and that the government is not barred by laches of its officers, however gross, in a suit brought by it as a sovereign to enforce a public right or to assert a public interest. But these doctrines have no application here. The limitation invoked by the railway company is not statutory, but contractual, and the claim of the government is barred, not because of laches of its officers, but because of the express provisions of a contract into which its officers have entered. As said in Thigpen v. East Carolina Railway, supra, in which it was sought to extend the contractual limitation under the provisions of a statute extending the statute of limitations in favor of the estates of deceased persons:

"The rights of the parties flow from the contract. It relieves them from the limitations of the general statute, and, as a consequence, from its exceptions also. Against both statutes, the parties have specifically contracted. 'Only within two years and one day' shall suits be instituted, is the provision of the contract. This stipulation is expressly made an integral part of the agreement, and it is attached as a condition thereto. The time limit having been made, as it is, of the essence of the right to institute suit, it follows that this right must be exercised before the expiration of the time fixed, or else it will ordinarily be lost."

See, also, Riddlesbarger v. Hartford Ins. Co., 7 Wall. 386, 391, 19 L. Ed. 257.

The real question in the case, then, is not one of laches, or of the statute of limitations, but whether the government is bound by this provision of the contract of shipment into which it has entered with the railway company, and we see no reason why it is not bound by this, as it is by any other provision of a contract which it has made. As said by the Supreme Court in St. L. B. & M. Ry. v. U. S., 268 U. S. 169, 173, 45 S. Ct. 472, 473 (69 L. Ed. 899). "In respect to furnishing transportation, a railroad ordinarily bears to the government the same relation that it does to a private person using its facilities." And the rule is well settled that, when the "government * * * comes down from its position of sovereignty, and enters the domain of commerce, it submits itself to the same laws that govern individuals there." Cooke v. U. S., 91 U. S. 389, 398, 23 L. Ed. 237; Standard Oil Co. v. U. S., 267 U. S. 76, 45 S. Ct. 211, 69 L. Ed. 519; Chesapeake & Delaware Canal Co. v. U. S., 250 U. S. 123, 126, 39 S. Ct. 407, 63 L. Ed. 889; U. S. v. Bank of the Metropolis, 15 Pet. 377, 392, 393, 10 L. Ed. 774; U. S. v. Barker, 12 Wheat. 559, 6 L. Ed. 728; England Nat. Bank v. U. S. (C. C. A. 8th) 282 F. 121.

In U. S. v. Barker, supra, the United States was the holder of a bill of exchange, and it was held not entitled to recover thereon against the drawer and indorsers, because of a delay of one day in giving them notice of dishonor. In United States v. Bank of the Metropolis, supra, a draft was accepted by the treasurer of the Post Office Department and discounted by the bank. It was held that the rights of the bank to charge the United States with the amount could not be defeated by any equities between the drawer and the Post Office Department, the court saying: "When the United States, by its authorized officer, become a party to negotiable paper, they have all the rights, and incur all the responsibility of individuals who are parties to such instruments."

In England Nat. Bank v. U. S., supra, it appeared that the government had a deposit in the bank in the name of a mess fund of one of the regiments of the army and that forged checks had been charged against this account. These checks, with statement of account, had been returned to the proper government officer, pursuant to a custom under which monthly statements were rendered to customers of the bank. It was held that the failure of the government officer, within

a reasonable time, to examine the vouchers and call the attention of the bank to the forgeries, would bind the government as an admission of the correctness of the account in the same way that a private individual would be bound.

We see no difference in principle between these cases and the case at bar. If the government is bound by the implied contracts which attach to negotiable paper or to the receipt of a bank statement, we see no reason why it is not bound by the express contract printed on a bill of lading. If it is barred by the neglect of its officers in failing to comply with the terms of a contract which is merely implied, we do not see upon what principle the neglect can be excused in a case where the contract expressly makes action a condition of liability.

It should be borne in mind that the clause of the commercial bill of lading relied on is one of the terms upon which the parties agreed when the goods were accepted for shipment by the carrier. There is nothing in it unreasonable or contrary to public policy. Its purpose was to provide for the ascertainment of liability before the means of proof should be lost, and there is every reason for applying it to shipments by the government that exists in other cases. We know of no principle of law under which the government, after receiving the benefits of a contract into which it has lawfully entered, can repudiate the conditions upon which the contract was made. It is suggested that the officer of the government who made the shipment was without authority to agree to a limitation on the right of the government to sue; but it is admitted that he had authority to make the shipment on the government bill of lading, and that instrument itself, as we have seen, incorporates by reference the condition limiting the time for suit.

The government places great reliance on the decisions of the Court of Claims in M., K. & T. R. Co. v. U. S., 62 Ct. Cl. 373, decided June 14, 1926, and American Railway Express Co. v. U. S., 62 Ct. Cl. 615, decided November 16, 1926. The first of those cases dealt with the clause of the commercial bill of lading which requires that claim in writing be filed within six months, and this provision the court held to be inconsistent with the provisions of the government bill of lading. In the American Railway Express Company Case, it appeared that, although the government did not bring suit on its claim against the express company, it did, within the prescribed period, apply funds in its hands belonging to the express company in extinguishment of the claim. Without expressing opinion as to the questions involved in those cases, we do not think that they are decisive of the question involved here.

For the reasons stated, the judgment of the District Court is affirmed.

Affirmed.