**John E. LYDLE, Plaintiff,**

v.

**Ethel Macy SCOTT et al., Defendants.**
**Quaker State Oil Refining Corporation,**
**Defendant in Attachment.**

**Civ. A. No. 33569.**

United States District Court
N. D. Ohio, E. D.

Dec. 23, 1957.

730

Dan B. Cull, Cleveland, Ohio, for plaintiff.

Frank C. Heath and Thomas P. Mulligan (of Jones, Day, Cockley & Reavis), Cleveland, Ohio, for principal defendants.

McNAMEE, District Judge.

The issues here presented arise upon the motion of defendants "to dissolve an attachment and to dismiss the action for lack of jurisdiction over the person and property of the defendants."

The facts essential to an understanding of the decision reached herein are:

This action was commenced in the Common Pleas Court of Summit County, Ohio, by the filing of a petition on April 13, 1957. All the principal defendants are non-residents of the State of Ohio, and service by publication was had pursuant to the applicable Ohio statutes. After the commencement of the action, plaintiff filed an affidavit in attachment asseverating that the defendants are justly and truly indebted to plaintiff in the sum of $72,283.59; that said claim

is a debt or demand arising upon contract, and that the Quaker State Oil Refining Corporation, defendant in attachment, is indebted to the principal defendants and has in its possession money, credits, etc. belonging to said defendants. An order in attachment was served upon the branch manager of the defendant in attachment in Marietta, Ohio on April 4, 1957. Thereafter the case was removed to this court on the ground of diversity of citizenship.

The motion to dissolve the attachment is based upon two grounds:

"1. That all the defendants are non-residents of Ohio and have not been served personally with process.
2. That the order of attachment is ineffective because (a) This is not the type of action in which attachment is proper, and (b) The interest, if any of the defendants in said property is contingent and uncertain."

The nature of the action is evidenced by the allegations of the Complaint, from which it appears that on May 25, 1956, the plaintiff and defendants entered into a contract by the terms of which plaintiff agreed to pay $372,000 for the purchase of certain oil leases in Pennsylvania and New York. At the time of executing the contract plaintiff paid $10,000, which sum was to be held in escrow pending the closing of the transaction. The contract provided that at the time of closing defendants were to deliver to plaintiff good and sufficient instruments of transfer conveying merchantable title free and clear of all liens and incumbrances. It was further agreed that plaintiff should take possession of and operate the properties on June 1, 1956, pending the closing of the transaction which, upon its consummation, would become effective retroactively as of June 1, 1956. * The parties also agreed that the defendants were to "embargo" the oil runs from June 1, 1956. Pursuant thereto the defendants issued an order to the Quaker State Oil Refining Corporation to hold the proceeds of the oil runs until further order.

On June 1, 1956, plaintiff took possession of and operated the properties until January 18, 1957, at which time he notified defendants of his election to rescind the purchase agreement on the ground of fraud, and on January 21, 1957, plaintiff turned over the possession of the properties to the defendants. It is apparent that at the times last mentioned the transactions had not been closed. Plaintiff alleges further that he elected to rescind the agreement upon the ground that he was induced to purchase the property by the false and fraudulent representations of defendants' sales agent, which are specifically stated in the Amended Complaint. Plaintiff avers further that in addition to the down payment of $10,000, he made disbursements and incurred liabilities in the operation and improvement of the properties amounting to $62,283.59, all to his total damage in the sum of $72,283.59, and that defendants refused to comply with plaintiff's demand for payment thereof. In his Amended Complaint plaintiff prays for a judgment against the defendants in the above amount or such part thereof as may be satisfied out of the property and funds in the hands of the defendant in attachment; that the agreement between the plaintiff and defendants be declared null and void by reason of plaintiff's election to rescind, and for such other and further relief as may be just and equitable.

At the time he elected to rescind the contract, plaintiff also sent the following notice to counsel for defendants: "I hereby further notify you and all your associates that you will be held accountable for all funds now in the oil escrow and going in, plus funds presently in the down payment escrow."

Plaintiff objects to the consideration of the copy of the contract of May 25, 1956, which is attached to defendants' brief and to the copy of the notice sent by plaintiff to defendants on January 18, 1957, which is also attached to defendants' brief and which is set out in full above. It is plaintiff's position that under Ohio law the court cannot consider

such exhibits in ruling upon a motion to dissolve an attachment. For the purposes of this proceeding, however, it is immaterial whether such exhibits are considered. The inclusion of such exhibits as a part of the record made on this motion leads to the same ruling that would be made if the exhibits were excluded.

Defendants submit no argument in support of the first ground of their motion. Non-residence constitutes no basis for dissolving an attachment. On the contrary, Section 2715.01, Rev.Code of Ohio, specifies non-residence as one of the grounds of attachment in cases where the debt arises upon contract.

In support of their claim that this is not the type of action in which attachment is proper, defendants contend that plaintiff seeks a judicial determination that the contract between the parties is void and that inasmuch as such a declaration must rest upon jurisdiction of the persons of the defendants, which is lacking here, the court is without power to grant such relief.

The defendants are on sound ground in arguing that a court is without jurisdiction to rescind a contract where all parties whose rights would be affected thereby have not been personally served or voluntarily entered their appearances in the action. However, defendants' contention that plaintiff's right to a money judgment is dependent upon and incidental to a judicial decree of rescission stands upon a different and less secure foundation.

Where a contract has been rescinded by the act of one of the parties on the ground of fraud and an action brought for the recovery of money paid or expended thereunder, it is not an essential prerequisite of the plaintiff's right to recover a money judgment that his rescission of the contract be confirmed by judicial decree. This is true even though in such case, in addition to a prayer for a money judgment, plaintiff asks for a rescission of the contract or a judicial declaration that the rescinded

contract is void. In Taylor v. Brown, 92 Ohio St. 287, 110 N.E. 739, 743, the plaintiffs, who had purchased undivided interests in land from the defendant, rescinded the contract on the ground of fraud, tendered back the conveyances received by them and demanded a return of the money paid. Thereafter, in an action to recover money, the plaintiffs also sought an accounting, a rescission of the contract, and other equitable relief. The Supreme Court of Ohio held that the action was one at law, triable to a jury, and declared that the prayer for equitable relief of accounting and rescission was unnecessary. Pertinent here is the observation of the court that:

"Rescission may obtain in equity where there is no adequate remedy at law, but in other cases the party aggrieved may himself rescind and recover damages. This action proceeds upon the theory that the plaintiffs have rescinded, and the authorities are uniform that in a case like the present, where the remedy at law is adequate and full, it may be had without a judicial rescission. 24 Am. & Eng.Ency.Law (2 Ed.), 614; 1 Pomeroy's Eq.Jur. (3 Ed.), § 110; Gould v. Cayuga County Nat. Bank, 86 N.Y. 75, 84; and Getty v. Devlin, 54 N.Y. 403, 415."

See also Par. 4 of the syllabus. The weight of authority in other jurisdictions is to the same effect. This is made clear by reference to two comprehensive notes on the subject at pp. 1000 et seq. and 1028 et seq. of Vol. 95 A.L.R. Referring to the case preceding the second note mentioned above, the annotator says:

"In McCall v. Superior Ct., 1934 [1] Cal. [2d 527], 36 P.2d 642, 95 A.L.R. 1019, the view was distinctly affirmed that, in fraud as in other cases, where there has been a rescission of the contract by act of the parties before suit, an action thereafter brought for the recovery of money paid on the contract is one at law upon a contract implied by law to make restoration, and this notwithstanding the complaint prays that

the rescission be confirmed, and demands equitable relief in the cancelation of various written instruments, contracts, and obligations entered into between the parties as a part of the transaction in question; the court emphasizing that such an action is to be distinguished from a purely equitable suit to obtain a rescission by decree of court."

█ In Philpott v. Superior Court, 1 Cal.2d 512, 36 P.2d 635, 95 A.L.R. 990 at page 1000 et seq., an action was brought for the recovery of money paid for the purchase of stock upon a contract which had been rescinded by the defrauded party, who also prayed for equitable relief. In that case the court held that the action was one at law and that a judgment of rescission in such case was "entirely superfluous." In commenting upon the quoted statement of the court, the annotator says at p. 1017:

"In so holding, the court emphasized that the circumstance that the action was founded upon an equitable obligation did not prevent its being one at law."

Cf. Weirick v. Mansfield Lumber Co., 96 Ohio St. 386, 117 N.E. 362; Hart v. Andrews, 103 Ohio St. 218, 132 N.E. 846. While a definitive ruling on the merits of plaintiff's claim must await a determination on the merits, a liberal construction of the Amended Complaint requires the determination on this motion that plaintiff's action be regarded as one at law for the recovery of money.

█ A further contention of defendants is that plaintiff's rescission of the contract was ineffective because he did not offer to restore to the defendants all benefits received by him under the contract. It is urged that plaintiff "had not alleged and could not allege such an offer," presumably because of his notice of January 18, 1957, to defendants' counsel that he would hold them and their associates accountable for the moneys held in the down payment escrow and the oil escrow.

I find no merit in this argument. Plaintiff restored possession of the properties to the defendants within three days after he notified them of his election to rescind. The defendants were likewise restored to their right to operate the properties. These were the only benefits plaintiff received. It has not been shown that the defendants delivered or tendered any instruments of title to plaintiff. Nor did plaintiff receive any money for the oil delivered to Quaker Oil Refining Corporation during the period he operated the properties. While it was agreed that the proceeds of such sales were to be embargoed, this was accomplished by an order of the defendants to Quaker. Apparently defendants at all times had constructive possession and control of the embargoed funds. From the allegations of the Amended Complaint it would appear that the interest, if any, of plaintiff in those funds was merely an inchoate right to their payment to him upon defendants' order when and if the transaction was consummated, and that upon rescission of the contract plaintiff's inchoate right under the agreement was extinguished. Even if this were not so, under the circumstances shown by the record it would be inequitable and repugnant to the underlying principle of the doctrine of restoration to require plaintiff as a condition precedent to his right to rescind to relinquish whatever interest, if any, he had in the embargoed funds. Plaintiff claims he has suffered a loss of over $72,000 by reason of defendants' fraudulent representations. Defendant in attachment has not filed an answer disclosing the amount it holds to the credit of defendants. However, counsel in oral argument indicated that the attached fund is substantially less than the amount for which plaintiff seeks judgment.

Professor Williston, in his work on Contracts, Volume 5, pages 4292–4293, Section 1530, says:

" 'That a party seeking rescission of a contract must return, or offer to

734

return, what he has received under it, and thus put the other party as nearly as is possible in his situation before the contract, is the law. But this rule is wholly an equitable one; impossible or unreasonable things, which do not tend to accomplish equity in the particular transaction, are not required.' In some cases even where restoration of the consideration is entirely possible, it has not been required. * * * or *where the party seeking relief has suffered for any reason by the fraud a greater loss than the consideration which he retains.* Where circumstances permit, some courts also have allowed as a substitute for restoration of the consideration a deduction of the amount of it from the recovery against the wrongdoer. This is the most satisfactory disposition of many cases." (Emphasis supplied.)

Clearly it would be entirely unreasonable to hold upon this motion that plaintiff ought to have done more than he did by way of restoration. He has restored all that he received and, in the language of Professor Williston, he has put the defendants as nearly as possible in their situation before the contract.

█ As a further ground in support of their motion defendants advance the argument that "The property held by Quaker is not attachable because it is a part of the dispute between the parties and its ultimate disposition is uncertain and wholly contingent on the result of this lawsuit." This contention may be disposed of with brief comment. Defendants do not deny that they have an interest in the alleged fund; nor do they deny that Quaker has funds or credits in its possession belonging to them. Indeed, a disclaimer by defendants of any interest in the attached funds would not render such funds unattachable. See Rice v. Wheeling Dollar Savings & Trust Co., 155 Ohio St. 391, 99 N.E.2d 301. Defendants' interest in the attached fund has become contingent because of the order of attachment. Upon the record here made, Quaker's debt to defendants is a mature obligation and meets the test laid down in Marquis v. New York Life Ins. Co., 92 Ohio App. 389, 108 N.E.2d 227, 37 A.L.R.2d 261, that it must be an indebtedness owing *in praesenti* by the garnishee defendant to the non-resident principal defendant. There can be no doubt that if the attachment were dissolved, defendants could enforce collection of the funds in the possession of Quaker.

For the foregoing reasons I am of the opinion that the order of attachment is valid and that the court has jurisdiction of the subject of this action. It is unnecessary to add that nothing hereinabove stated is intended as an expression of opinion on the merits of the controversy.

The motion to discharge the attachment and to dismiss the action is overruled.