UNITED STATES of America,
Libellant,

v.

S.S. CLAIBORNE, her engines, boilers, etc. in rem and Waterman Steamship Corporation, in personam, Respondents.

No. 3137.

United States District Court
S. D. Alabama, S. D.

April 12, 1966.

See also D.C., 226 F.Supp. 578.

Vernol R. Jansen, Jr., U. S. Atty., Mobile, Ala., Bertram E. Snyder, Admiralty & Shipping Section, Dept. of Justice, for libellant.

William H. Armbrecht, Armbrecht, Jackson & DeMouy, Mobile, Ala., for respondents.

DANIEL HOLCOMBE THOMAS, District Judge:

The Respondents have filed a Motion for Summary Judgment with supporting affidavits.

The dispute arises out of an alleged freight overcharge by the Respondent, Waterman Steamship Corporation, hereinafter called Waterman, for the carriage of certain military cargo from New Jersey and New York to the Azores in December of 1951.

The Libel was filed by the Government on January 4, 1963. The cargo in question, principally lumber, was carried aboard the S.S. CLAIBORNE which departed New York on or about December 15, 1951. The parties have stipulated that the cargo was discharged and delivered to the Libellant in the Azores on December 29, 1951.

The shipment in question was carried under Government Bill of Lading #WV-9798064, dated December 14, 1951, which is a Government standard form, being #1103, approved by the Comptroller General in 1943, and which names the Port Transportation Officer, New York Port of Embarkation, Brooklyn, New York, as shipper, and designates the Commanding General, U. S. Air Forces, Praia, Azores, as the consignee. The shipment was contracted and arranged for between Waterman and the Military Sea Transportation Service and after the cargo was delivered, Waterman billed MSTS, Water Transportation Division, Washington, D. C. for its charges as required by the Government bill of lading.

The billing was submitted by Waterman to MSTS on February 29, 1952 on a form designated as Public Voucher for Transportation Charges, standard form 1113 as prescribed by the Comptroller General. Thereafter, on April 10, 1952, one C. M. Jones, who is designated as a Government Accountant and as the Authorized Certifying Officer, certified on the voucher that Waterman's services shown thereon "were rendered as stated as evidenced by the attached subvouchers; that the services were necessary in the conduct of official business, and that the amount is a proper charge to the appropriation(s) shown." On April 16, 1952, the bill was paid by MSTS.

The Motion for Summary Judgment is based upon the contractual periods of limitation contained in Waterman's bill of lading and in the rules and regulations of the North Atlantic Portuguese Freight Conference Tariff No. 5.

The Government form bill of lading in paragraph 2 incorporates by reference the Waterman Commercial Bill of Lading in the following language:

"Unless otherwise specifically provided for or otherwise stated hereon, this bill of lading is subject to the same rules and conditions as govern commercial shipments made on the usual forms provided therefor by the carrier."

It appears from the affidavits of C. R. Hall, Sterling F. Stoudenmire, Jr. and M. A. Kearns that the form of bill of lading used for such shipment was the usual Waterman form in use at that time and that fact has not been denied by the Government.

Paragraph 15 of such Waterman bill of lading provides that suit for overcharge must be brought within one year from the date the goods are delivered. The actual language is as follows:

"* * * the carrier and the ship shall be discharged from all liability in respect of claim for overcharge and/or overpayment of freight unless suit is brought to recover the same within one year from the date the goods are delivered."

The Government has shown, by affidavits filed by it, that after the billing had been certified and paid by MSTS, it was then forwarded to the General Accounting Office, but was not received by the General Accounting Office until November of 1952. The billing then remained in the General Accounting Office until September 27, 1957, when a notice of overcharge was mailed to Waterman. Over four years later, the bill remaining unpaid, suit was instituted by the Government for the alleged overcharge. In the meanwhile, many years prior to the institution of the suit, one Kars Kraack, who was the employee of Waterman, who had quoted and agreed upon the rate with MSTS, died.

The primary question presented is whether the Government, as the sovereign, can be held time-barred by provisions contained in a carrier's bill of lading when the shipment moves under a Government form bill of lading which

embodies, by reference, the terms of the carrier's bill of lading.

■■ It is the general rule that statutes of limitation do not bind the United States, unless Congress has manifested an intention that the Government be so bound. However, it is established that in contracting for the transportation of cargo a carrier bears the same relation to the Government that it does to private shippers. St. Louis, B. & M. R. Co. v. United States, 268 U.S. 169, 45 S.Ct. 472, 69 L.Ed. 899.

Likewise, the Supreme Court has held that when the United States "comes down from its position of sovereignty and enters the field of commerce, it submits itself to the same laws that govern individuals". Cooke v. United States, 91 U.S. 389, 23 L.Ed. 237. With specific reference to a carrier's shipping contracts in the form of a rail bill of lading which provided for a nine month claim filing provision and a two year period for filing of suit for cargo damage, the Fifth Circuit has held that the limitations were valid and binding upon the United States. United States v. Chicago, R. I. & P. R. Co., 200 F.2d 263 (5th Cir., 1952). In that case the Government contended, as it does here, that it cannot be barred by any limitation of time to either file claim with the carrier or to file suit, in the absence of an act of Congress authorizing such a limitation. In upholding the validity of the limitation contained in the carrier's bill of lading and rejecting the Government's argument that it could not be time-barred in the absence of an express Federal statute, the Fifth Circuit held:

> "The bill of lading, issued by the railroad company * * * is the contract that governs the movements of each shipment in question. It is not disputed that the particular limitations above mentioned were contained in each bill of lading at the time the contract of transportation came into existence. Therefore, they are just as much a part of the contract as any other clause or paragraph therein. Such a

provision, many times, has been held valid as to ordinary shippers. Northern Pacific Railway Company v. Mackie, 9th Cir., 195 F.2d 641. * * * The real question in this case is whether the Government is bound by the limitations in the contract of shipments into which it has entered with the railroad company. * * * To quote with approval from the opinion in the case of U. S. v. Seaboard Airline Ry. Co., 4th Cir., 22 F.2d 113, 116: * * * 'There is nothing in it unreasonable or contrary to public policy. Its purpose was to provide for the ascertainment of liability before the means of proof should be lost, and there is every reason for applying it to shipments by the government that exists in other cases. We know of no principle of law under which the government, after receiving the benefits of a contract into which it has lawfully entered, can repudiate the conditions upon which the contract was made.' "

The case of United States v. Seaboard Airline R. R. Co., 22 F.2d 113 (4th Cir., 1927) involved the identical Government form bill of lading which is involved here and the Court there held that the carrier's suit filing limitation period had been validly incorporated by the language of paragraph 2 of the Government bill of lading.

■ Provisions in transportation contracts limiting the time for suit are valid and binding on the United States. United States v. S.S. Southstar (Prudential S.S. Co.), 115 F.Supp. 102, (S.D. N.Y., 1953), aff'd 210 F.2d 44 (2d Cir., 1954); Grace Line v. United States, 144 F.Supp. 548 (S.D.N.Y., 1956), aff'd 255 F.2d 810 (2d Cir., 1958); United States v. S. S. Mormacteal, 213 F.Supp. 149 (S.D.N.Y., 1962); Delaware, L. & W. R. Co. v. United States, 123 F.Supp. 579 (S. D.N.Y., 1959); Hughes Transportation Co. v. United States, 121 F.Supp. 212, 230 128 Ct.Cl. 221 (1954).

The Government contends that the above cited cases are not controlling be-

cause they involved cargo claims and not overcharge claims. The same rule should apply to both types of claims. They are both based upon wrongs committed by the carrier.

■■ The Government further contends that the period of limitation involved in the instant case is unreasonable as to it due to its own internal auditing procedures and the backlog of auditing with which the General Accounting Office was then faced. However, since the Government bears the same relation to the Respondent as it does to a private shipper and the limitation does not violate public policy, this argument is unavailing, United States v. Seaboard, supra. The Government in this connection relies principally upon the case of United States Shipping Board Emergency Fleet Corp. v. Texas Star Mills, 12 F.2d 9 (5th Cir., 1926) wherein the Government claimed the shipper's claim for cargo damage was time-barred under a six month bill of lading provision. In that case the shipments of flour were delayed by action of the carrier so that they did not arrive in Cuba until one month before the period of limitation would expire. Under such circumstances the Court held the period of limitation was unreasonable and, therefore, not binding on the shipper. The Government waited almost eleven years after paying Waterman's voucher before instituting this suit. In the instant case no material delay was occasioned by the carrier. The delay in auditing and filing of suit is chargeable solely to the Government. The limitation contained in Waterman's bill of lading is not unreasonable as applied to the Government in this case.

■ The United States does not question that the shipping contract was made and that the Government bill of lading was signed by an authorized representative of an appropriate agency of the Government. The bill of lading must be construed and interpreted under the same general rules which apply in the case of contracts between individuals. United States v. Seaboard, supra.

In view of the foregoing, it is not necessary for this Court to decide whether the limitation contained in the North Atlantic Portuguese Freight Conference Tariff is binding upon the Government.

In accordance herewith, Respondents' Motion for Summary Judgment is granted and Order will be this day entered.