UNITED STATES of America,
Plaintiff-Appellant,

v.

WATERMAN STEAMSHIP CORPORA-
TION, Defendant-Appellee.

No. 71-3424.

United States Court of Appeals,
Fifth Circuit.

Jan. 4, 1973.

C. S. White-Spunner, Jr., U. S. Atty., Mobile, Ala., David V. Hutchinson, Adm. & Shipping Sec., U. S. Dept. of Justice, Walter H. Fleischer, Harry R. Sachse, Attys., Dept. of Justice, Washington, D. C., for plaintiff-appellant.

William W. Stoudenmire, George F. Wood, Mobile, Ala., for defendant-appellee.

Before COLEMAN, GOLDBERG and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge.

The United States brought this suit to recover excess freight charges paid by it to Waterman Steamship Company as reimbursement for the cost of shipping goods abroad for the Cooperative for American Relief Everywhere, Inc. (CARE), a private, nonprofit voluntary relief organization. The suit was grounded on Waterman's written certification to the United States that the freight charges were at prevailing rates. Waterman pleaded as an affirmative defense that suit was time-barred by the one-year limitation period prescribed by the bill of lading under which the goods were shipped, and moved to dismiss the complaint. The District Court recognized that the suit was grounded on the certification, which unlike the bill of lading did not limit time for suit, but nevertheless held that the time limitation of the bill of lading was binding on the government and granted Waterman's motion to dismiss. We are unable to agree that the time limitation in the bill of lading governs suits for breach of the certification, and accordingly we reverse and remand.

The Agency for International Development (AID), an unincorporated agency within the Department of State, is authorized to implement programs specified in the Foreign Assistance Act of 1961, 22 U.S.C. §§ 2151–2406. As part of its authorized functions, AID reimburses qualifying volunteer relief organizations for the cost of shipping goods to "less developed" foreign countries. The procedures for reimbursement of ocean shipment costs are set out in 22 C.F.R. §§ 202.1–202.8. Under these procedures, reimbursement—which is defined as payment to an agency by AID or a cooperating bank acting on behalf of AID—cannot exceed the prevailing rate for similar shipments by similarly situated customers. Issuance of a procurement authorization to the qualifying relief agency is a prerequisite to reimbursement. A procurement authorization, according to evidentiary materials before this court, obligates AID to make reimbursement for ocean shipments upon certification by the carrier that the freight charges do not exceed prevailing rates.

Pursuant to the regulations, AID issued procurement authorizations by which AID became obligated to reimburse approved banking institutions that paid shippers of CARE goods. On October 12, 1965, Waterman shipped for CARE a cargo of wheat to Trabzon, Turkey. Waterman applied in due course to AID, through a cooperating

bank, for shipping costs reimbursement, presenting with its application the following required certification:

(i) [the carrier] is entitled under the contract of carriage to the sum charged to the shipper-voluntary relief agency and (ii) the sum charged to the shipper-voluntary relief agency does not exceed the prevailing rate, if any, for similar services . . . .

(2) The undersigned agrees that upon request of the Administrator of AID he will promptly make refund to AID . . . in the event of nonperformance of any of the terms of the contract of carriage or for breach of any of the terms of this certificate.

In December 1965 AID paid the shipping costs to Waterman through a cooperating bank. AID later determined that the shipping costs exceeded prevailing rates and filed this suit for refund in 1971, just under six years from the dates of shipment and reimbursement.

Thus, the suit was filed within the six-year limitation period for government suits on contracts prescribed by 28 U.S.C. § 2415, but outside the one-year limitation on suits for overcharges prescribed by the bill of lading executed by Waterman and CARE. This one-year limitation is stated in the bill of lading as follows:

[T]he carrier and the ship shall be discharged from all liability in respect of claim for overcharge and/or overpayment of freight unless suit is brought to recover the same within one year from the date the goods are delivered. . . .[1]

The narrow issue on appeal is whether the limitation period contained in the contract of carriage executed by Waterman and CARE time-bars a suit by the government for breach of the carrier's covenant in the certification form that freight charges do not exceed prevailing rates.

 We find that the government is not bound by the limitation period in the bill of lading for three fundamental reasons. First, the government was neither party nor privy to the bill of lading, and therefore, under traditional principles of contract law, is not bound by its provisions, absent consent to be bound. There was privity between Waterman and the government with respect to the certification contract, pursuant to which Waterman warranted that charges were at prevailing rates. However, the limitation with which Waterman seeks to encumber the government is contained in the bill of lading, not the certification contract. Secondly, the government has not consented to be bound by the short limitation period of the bill of lading. To the contrary, the certification contract, to which the government and Waterman were parties, does not set time limitations on suits for breach of the certification contract. Necessarily, then, the only limitation period on certification-contract suits to which the government has "consented" is the six-year limitation period of 28 U.S.C. § 2415, which is generally applicable to government suits on contracts. Thirdly, the government did not sue for breach of the bill of lading. The certification contract gives the government a cause of action for overcharges independent of causes of action arising under the bill of lading, and it is for breach of the certification contract that the government now sues. That the government and Waterman recognized an independent cause of action for overcharges is made clear by Waterman's promise, in the certification form, to "make refund to AID [1] in the event of nonperformance of

---

1. The bill of lading contained the following additional limitation provision:
 "In any event the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought within one year after the delivery of the goods or the date when the goods should have been delivered. . . ."
 Limitation provisions such as the above are patterned after § 3(6) of the Carriage of Goods by the Sea Act, 46 U.S.C. § 1303(6).

any of the terms of the contract of carriage or [2] *for breach of any of the terms of this certificate."*

■■ Waterman seeks to avoid the above reasoning by arguing that the government owed an unconditional obligation to reimburse for shipping costs incurred by CARE. Thus Waterman invokes the following rule:

> [W]hen a party merely does what he has already obligated himself to do, he cannot demand an additional compensation therefor, and, although by taking advantage of the necessities of his adversary, he obtains a promise for more, the law will regard it as *nudum pactum*, and will not lend its process to aid the wrong.[2]

As the rule suggests, the certification contract would be unsupported by fresh consideration if indeed the government owed Waterman a pre-existing, unconditional obligation to pay CARE's shipping expenses. The rule's requirements are not met in this case, however, for two reasons. First, Waterman has offered no theory by which it can claim the benefits of AID's obligation. For example, Waterman arguably could claim the benefits as a third-party beneficiary to the contract between CARE and AID, but third-party beneficiary questions invariably require contract interpretation, 4 Corbin, Law of Contracts § 775 (1951), and should be presented to the factfinding court in the first instance. Secondly, the record on appeal indicates that the government did not owe an unconditional obligation to reimburse. Pursuant to the procurement authorization form issued to CARE prior to shipment, AID promised to make reimbursement *on the condition* that the carrier make the required rate certification. Even assuming, then, that Waterman could claim the benefits of AID's obligation to reimburse, the certification contract nevertheless would be supported by legal consideration. "If the promise is expressly, impliedly, or constructively conditional, the right of the beneficiary is a conditional right." *Id.* § 818, at 269. Reduced to simplest terms, the consideration for the certification contract was that, in exchange for Waterman's executing the condition, the government paid the shipping costs.[3]

■ Similarly unpersuasive is Waterman's argument that AID was a joint venturer with CARE. It is axiomatic, of course, that the provisions of a bill of lading executed by one joint venturer would bind the other. "Joint enterprise," however, is a question of fact, Prosser, Law of Torts § 71 (3d ed.1964), and the District Court made no finding of fact with respect to joint enterprise. More importantly, the government did not choose to engage in a joint enterprise with CARE. It rather sought to subsidize foreign shipments abroad in accordance with the detailed procedures of 22 C.F.R. §§ 202.1–202.8. Unquestionably the government is not a joint venturer with private individuals or organizations solely because their activities are government subsidized.[4]

---

2. 1 Williston, Law of Contracts § 130, at 532 (3d ed. 1957), quoting from Lingenfelder v. Wainwright, 103 Mo. 578, 15 S.W. 844, 848 (1891).

3. Waterman's argument that suit is time-barred because of lack of consideration to support the certification contract is anomalous. Contracts void for lack of consideration do not support suits, regardless of time of filing.

4. Waterman makes the related argument that since the contract defines "shipper" as "one for whose account the goods were shipped," the government was a "shipper" and thus bound by the bill of lading. The argument is without merit.

A party cannot unilaterally employ definitions to bind another by provisions to which the other has not consented to be bound.

While our treatment of issues is influenced by the manner in which they are presented by the parties, we note a more fundamental flaw in Waterman's attempts to make the government party to the bill of lading by its "joint venture" and "shipper" theories. Making the government party to the bill of lading would not alter the result in this case. The government sued for breach of the certification contract, not for breach of the bill of lading. Therefore, the provisions of the certification form govern the suit.

The district court concluded that U. S. v. S. S. Claiborne, 252 F.Supp. 897 (S.D. Ala.1966), required summary dismissal of the government's suit. That case is, however, factually distinguishable. In S. S. Claiborne the government engaged the carrier to ship cargo to the Azores. The bill of lading was a form prepared by the government and provided that "the carrier . . . shall be discharged from all liability . . . for overcharge . . . unless suit is brought to recover the same within one year from the date the goods are delivered." The court held that this provision time-barred the government from suit for overcharge on the ground that "the sovereign . . . can be . . . time-barred by provisions contained in a carrier's bill of lading when the shipment moves under a Government form bill of lading . . . ." As this holding discloses, the issue in S.S. Claiborne was whether the sovereign has capacity to consent to limitation periods in bills of lading, not whether the government had consented to a limitation period in the bill of lading. Therefore, S.S. Claiborne does not undercut the government's position in this case, in which the issue is whether the government has in fact consented to be bound by the short limitation period in the bill of lading. To the contrary, that the government was a party to the bill of lading in S. S. Claiborne supports by implication the government's contention in this case that it is not bound by the limitation period of a bill of lading to which it was not party. See also U. S. v. Bloomfield S. S. Co., 359 F.2d 506 (5th Cir.1966), cert. denied, 385 U.S. 1004, 87 S.Ct. 709, 17 L.Ed.2d 543 (1967); Shutt v. U. S., 218 F.2d 10 (5th Cir.1954), cert. denied, 350 U.S. 822, 79 S.Ct. 48, 100 L.Ed. 734 (1955).

In its appellate brief the government explains the policy reasons underlying the agreement by Waterman and AID not to restrict suits on the rate certification contract to a short period. We consider these policy reasons to be sound. When the government sends goods abroad by contracting with carriers, it can directly control shipping costs. When the government promotes foreign trade by reimbursing private agencies for their shipping costs, however, it can neither control the shipping costs nor ignore the possibility that the shipper will agree to inflated costs knowing that they will be passed along to the government. To balance the threat of inflated charges with the need for prompt reimbursement, the government pays the carrier under a certification contract by which it reserves the right to audit charges at a later date. The overall plan of the government is to audit thoroughly freight charges without the strictures of short limitation periods invariably prescribed by contracts of carriage while at the same time expeditiously reimbursing carriers for the shipping costs. The two-step procedure of issuing procurement authorizations to the agency and later reimbursing the carrier upon proper certification is one way to effectuate this plan.

■ This appeal originated from the grant of a motion to dismiss with attached affidavits. In this posture, our review is governed by the rule that well-pleaded and uncontroverted, material, factual allegations of the complaint must be accepted as true. See Adickes v. Kress & Co., 398 U.S. 144, 153–161, 90 S.Ct. 1598, 26 L.Ed.2d 142, 151–156, (1970); Gardner v. Toilet Goods Assoc., 387 U.S. 167, 172, 87 S.Ct. 1526, 18 L.Ed. 2d 704, 708 (1967); McAlester v. Brown, 469 F.2d 1280 (5th Cir.1972); Pogue v. Great Atlantic & Pac. Tea Co., 242 F.2d 575, 576 (5th Cir.1957). Accordingly, we have accepted as true the allegation that the government's obligation to reimburse, as stated in the procurement authorization form was a conditional one, even though the procurement authorization form was not included in the record on appeal. We consider open on remand the issues (1) whether the government owed, pursuant to the procurement authorization form, an unconditional obligation to reimburse, and if so, (2) whether by some theory Waterman can claim the

benefits of that obligation. Since Waterman has already enjoyed one appeal on the time-limitation question, judicial economy suggests that these further issues should be carried with the case and disposed of at the time of final judgment on the merits. Short of these two issues, however, the bar to the suit is lifted and the government should be allowed to prove its allegation that Waterman breached the certification contract.

Reversed and remanded for proceedings not inconsistent with this opinion.