UNITED STATES of America,
Plaintiff,

v.

EMONS INDUSTRIES, INC., (formerly Amfre-Grant, Inc.) and E. Tosse & Co., Inc., Defendants.

No. 73 Civ. 1523.

United States District Court,
S. D. New York.

Jan. 12, 1976.

Thomas J. Cahill, U. S. Atty., S.D. N.Y., Patrick H. Barth, Asst. U. S. Atty., New York City, for plaintiff.

Weiss, Rothfarb, Kaminsky & Slade, New York City, for defendants; Melvin S. Slade, New York City, of counsel.

## MEMORANDUM

LASKER, District Judge.

The Agency for International Development (A.I.D.) brought this suit to recover $94,031.99, which it paid to Emons Industries, Inc. and E. Tosse & Co., Inc., (colloquially Emons) on various dates in

1966. Count one alleges that the defendants, exporters of medicinal drugs, breached sales contracts with Vietnamese importers by failing to comply with contract provisions regarding compliance with the Federal Food, Drug and Cosmetic Act (the Act). Count two alleges that shipment of the drugs was illegal under the Act,[1] thereby entitling A.I.D. to recover the full sum paid for the drug shipments.

Emons moves for summary judgment. It argues that A.I.D. lacks standing to sue for compensatory damages; that the action is time barred; and that A.I.D. is not entitled to a recovery unless it returns the allegedly illegal drugs to the defendants or allows the defendants to retain the drugs *quantum valebat* as a set-off.

The mechanism by which A.I.D. financed the defendants' transactions with the Vietnamese importers is circuitous. A.I.D. first reached an agreement with the Government of South Vietnam to finance the cost of pharmaceuticals purchased by Vietnamese importers from American companies. A.I.D. then issued Letters of Commitment to American banks, notifying the banks that A.I.D. would provide reimbursement for payments made to American exporters. After the defendants fulfilled the terms of their contracts with the Vietnamese importer by shipping the drugs to Vietnam, the defendants presented to the banks holding the Letter of Commitment a copy of the invoice, a copy of the air or ocean bill of lading and a Supplier's Certificate. In the latter document, the defendants certified to A.I.D. that they had met various A.I.D. requirements, including compliance with letters of credit issued by the banks. The banks then paid the supplier, sent the documentation to A.I.D. and were reimbursed.

## A.I.D.'s Standing to Sue

Emons argues that, in the contract at issue, A.I.D. is only a promisee in a three-party arrangement in which the Vietnamese are donee third-party beneficiaries. As the promisee, defendants contend, A.I.D. has suffered no pecuniary damages for any breach by the defendants of the sales contract and at most A.I.D. can recover nominal damages. In support of its position, Emons relies heavily on *United States v. Thomas B. Bourne Associates,* 367 F.Supp. 919 (E.D.Pa., Memorandum and Order dated December 7, 1973). In that case, A.I.D. had contracted with the defendants to furnish engineering services to the Republic of Guyana. The defendants were to have received compensation from a $1,500,000 A.I.D. grant to Guyana. A.I.D. sued to recover damages for the defendants' alleged breach of the contract. The District Court granted the defendants' motion for summary judgment on the ground that A.I.D. was only the promisee in a three-party contract under which Guyana was a third-party donee beneficiary; as the promisee, A.I.D. was not entitled to recover compensatory damages.

The *Bourne* decision is not dispositive, close as it may be, because unlike *Bourne* the defendants here were required to execute a Supplier's Certificate, which obligated the defendants to make "appropriate refund" to A.I.D. in the event they breached any of their undertakings in the Certificate or made any "false certification or representation" in that document. Paragraph 12[2] of the Certificate required compliance

---

1. Specifically, the Government claims that the exported drugs, Ethionamide INH and Neurophytol, were "new drugs" as defined by the Federal Food Drug and Cosmetic Act, 21 U.S.C. § 321(p), and could not have been legally exported without the approval of the Food and Drug Administration. The approval by the FDA for export of these drugs was not obtained by the defendants. For the purposes of the defendant's standing argument, these allegations are accepted as true. See *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

2. Paragraph 12 states in pertinent part:
   "The supplier has complied with the provisions contained and referred to in subpart D of A.I.D. Regulation I."

with certain A.I.D. regulations [3] which, in turn, required the defendant to meet the terms of the Letter of Credit under which they secured payment from the financing banks. Finally, the Letter of Credit bound the defendants to comply with the Food, Drug and Cosmetic Act and to certify that the drugs shipped to Vietnam were safe and efficacious for use as directed.[4] The Government contends that the defendants breached the representations and certifications made under these documents.

▪ In the circumstances we agree with A.I.D. that it has standing to sue for compensatory damages. In *United States v. Waterman Steamship Corp.,* 471 F.2d 186 (5th Cir. 1973), the United States Court of Appeals for the Fifth Circuit held that breach of an A.I.D. Supplier's Certificate creates an independent cause of action in favor of the government. In that case, the defendant had shipped goods overseas for the Cooperative for American Relief Everywhere, Inc. (CARE). A.I.D. had agreed to reimburse CARE for the shipping costs. The defendant had applied to A.I.D., for shipping costs reimbursement, presenting with its application a certificate that these costs did not exceed prevailing rates. A.I.D. alleged the defendant had breached this certification. The court found that:

3. Subpart D of A.I.D. Regulation I provides in relevant part:

"(a) *Performance of the sales contract:*
The supplier of commodities shall comply with the terms and conditions of his contract with the importer and of any *letter of credit under which he secures payment.*"
Section 201.31(a) of A.I.D. Regulation I, subpart D, 29 Fed.Reg.12900 (1964) (emphasis supplied).

4. The Chase Manhattan Bank Letter of Credit to E. Tosse & Co., Inc. (predecessor of the defendant, Emons Industries), dated June 3, 1966, provides in pertinent part:

"Suppliers are required to comply with the following additional requirements for Medicinal and Pharmaceutical Preparations. The sub-authorizing or import licensing authorities of the cooperating country shall cause importers to advise potential suppliers of these requirements and shall include them in their notifications to Agency for International Development.

\*   \*   \*   \*   \*   \*

B. SPECIFICATIONS AND COMPLIANCE: Every medicinal or pharmaceutical preparation shall comply with the requirements of paragraph 1 or 2 below:
1.) U. S. Federal Food, Drug, and Cosmetic Act

\*   \*   \*   \*   \*   \*

b. Any preparation which has ever been approved by U. S. Food and Drug Administration as a 'new drug', must be labelled as specified in the approved 'new drug application'.

\*   \*   \*   \*   \*   \*

d. If any medicinal or pharmaceutical preparation is not included in the USP or NF and is not a 'new drug', a certifiable antibiotic, or product containing insulin, it must meet the strength, quality, and purity specified in the labelling; and the supplier must have evidence, available to AID upon request, that it is safe and efficacious for use as directed in its labelling."
The First National City Bank Letter of Credit, dated September 28, 1966, provides in pertinent part:
SPECIAL PROVISIONS FOR A.I.D. FINANCING OF MEDICINAL AND PHARMACEUTICAL PREP. WHICH BECOMES AN INTEGRAL PART OF THIS CREDIT
I. *Importers' Responsibilities*
When AID finances the importation into a host country of commodities contained in AID Commodity Code 370, the sub-authorizing or import licensing authorities of the host country shall cause importers to advise potential suppliers that transactions for such commodities must meet the following additional requirements.

\*   \*   \*   \*   \*   \*

B. *Specifications and Compliance*
Every medicinal or pharmaceutical preparation shall comply with the requirements of paragraph 1 or 2 below:
1. U. S. Federal Food, Drug, and Cosmetic Act

\*   \*   \*   \*   \*   \*

b. Any preparation which has ever been approved by U. S. Food and Drug Administration as a 'new drug' must be labeled in accordance with the Food and Drug Administration's requirements relating thereto.

\*   \*   \*   \*   \*   \*

d. Any medicinal or pharmaceutical preparation not included in the USP or NF, and not an approved 'new drug,' a certifiable antibiotic or product containing insulin, must be supported by the supplier's signed statement that it meets the strength, quality and purity specified in its labeling, and is safe and efficacious for use as directed in its labeling."

"There was privity between Waterman and the government with respect to the certification contract, pursuant to which Waterman *warranted* that charges were at the prevailing rates . . . The certification contract gives the government a cause of action for overcharges . . . and it is for breach of the certification contract that the government now sues. That the government and Waterman recognized an *independent cause of action* for overcharges is made clear by Waterman's *promise,* in the certification form, to 'make refund to AID [1] in the event of nonperformance of any of the terms of the contract of carriage or [2] for breach of any of the terms of this certificate.'" 471 F.2d at 188–189 (emphasis supplied).

The Supplier's Certificate involved in this case required, among other things, that the defendants comply with requirements contained in A.I.D. regulations that related to the letters of credit under which the defendants secured payment. In effect, the terms of the letters of credit, subscribed to by the defendants, were incorporated into the Supplier's Certificate. The Certificate, also subscribed by the defendants, gives the Government an independent cause of action for breach of any of its terms. Without determining what its damages may be, if any, it is clear that the Government has standing to sue on account of the alleged breach of representations made by Emons in the Supplier's Certificate. *United States v. Bloomfield Steamship Co.,* 359 F.2d 506, 509 (5th Cir. 1966), *cert. denied,* 385 U.S. 1004, 87 S.Ct. 709, 17 L.Ed.2d 543 (1967); *United States v. Lykes Brothers Steamship Co.,* 353 F.Supp. 1151, 1153 (E.D.La. 1973).

### The Statute of Limitations

Paragraph 14 of the Supplier's Certificate stipulates that the contract shall be governed and interpreted in accordance with the law of the District of Columbia. Two sections of the District of Columbia Code are relevant. 12 D.C.Code § 301(7) (1967) specifies a three-year statute of limitations in contract actions. Standing alone, this section would bar the present action. However, 12 D.C.Code § 308 (1967) specifies that the three-year provision of § 301 does not apply "to an action in which the United States is the real and not merely the nominal plaintiff."

Emons contends that the United States is not the real party in interest in this action and that the three-year statute of limitations therefore applies. It argues that the United States is pursuing a claim in a nominal capacity on behalf of the Government of South Vietnam. To support its position, Emons relies on an internal A.I.D. directive which indicates that A.I.D. has a policy of making refunds from its suppliers available to the concerned foreign country. It is claimed that A.I.D. is merely a conduit for funds belonging to the South Vietnamese Government; and that if successful in this lawsuit the United States will reroute the recovered funds to South Vietnam.

The argument is strained. The Government's affidavits establish that A.I.D.'s rerouting policy becomes inoperative on the date of the last A.I.D. disbursement to the foreign country. We feel secure in taking judicial notice of the fact that A.I.D. has discounted its assistance program to South Vietnam. The present government of South Vietnam is quite unlikely to be the recipient of A.I.D. funds—rerouted or otherwise—in the foreseeable future. Any recovery by the United States in this action will inure to the benefit of A.I.D. or the United States Treasury and A.I.D. is therefore not a plaintiff in name only.

Accordingly, 12 D.C.Code § 301(7) is not applicable to this case; the governing statute (28 U.S.C. § 2415(a)) provides for a six year period of limitations [5] in

---

**5.** The allegations in the complaint deal with misrepresentations by the defendants that were allegedly made in 1966. The Government's complaint was filed in 1973, seven

an action "for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact . . ." and the action is not time-barred.

*Damages*

█ Emons claims that the United States is not entitled to restitution since it has not offered to return the pharmaceuticals or to pay for them. It is true that ordinarily restitution is not imposed except on condition that the plaintiff return "in some way what he has received as [part] performance by the defendant." 5 Corbin Contracts § 1114 (1964). However, Emons extends the proposition to argue that A.I.D. is not entitled to *any damages* because it seeks restitution and has not offered to return the drugs or pay for their value. The position is untenable for a number of reasons. First: even in cases of rescission full restoration is not always required. As Professor Williston has said:

> " 'That a party seeking rescission of a contract must return, or offer to return, what he has received under it, and thus put the other party as nearly as is possible in his situation before the contract, is the law. But this rule is wholly an equitable one; impossible or unreasonable things which do not tend to accomplish equity in the particular transaction are not required.' In some cases even where restoration of the consideration is entirely possible, it has not been required. * * * or when the party seeking relief has suffered for any reason by the fraud a greater loss than the consideration which he retains."

Williston on Contracts, 3d ed., § 1530. See, also, *Lydle v. Scott,* 157 F.Supp. 729, 732–4 (N.D.Ohio, 1957) and *Myzel v. Fields,* 386 F.2d 718, 742 (8th Cir. 1967),

*cert. denied,* 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968). Second, A.I.D. is not actually asking rescission of the contract. Rather it is seeking to enforce the terms of the supplier's certificate. If the Government establishes a breach of that document by Emons, Emons will be required to make "appropriate refund" to A.I.D. What constitutes an appropriate refund is a question not suitable to resolution at this point in the proceedings. It cannot be determined at this stage of the game whether Emons might be entitled to credit for all or part of the value of the drugs delivered. In any event its argument that it is entitled to summary judgment because the Government has not offered to restore the drugs or their full value, must fail.

The motion for summary judgment is denied.

It is so ordered.

years later. According to the Government's memorandum of law in opposition to the defendant's motion, the defendant consented to a tolling of 28 U.S.C. § 2415. The Government should have specified the date it contends the statute of limitations began to run and the

date the defendant consented to allow the statute of limitations to toll. In the absence of an argument by the defendant on this point, we assume this action is not barred by the six year period of limitations contained in 28 U.S.C. § 2415.