UNITED STATES of America,
Plaintiff-Appellee,

v.

CARGO EXPORT CORPORATION,
Defendant-Appellant.

No. 95, Docket 81–6065.

United States Court of Appeals,
Second Circuit.

Argued Oct. 2, 1981.

Decided April 1, 1982.

Anthony V. Barbiero, Elmont, N. Y., for defendant-appellant.

Janis G. Schulmeisters, New York City (Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D. C., Edward R. Korman, U. S. Atty., Lynne K. Zusman, Brooklyn, N. Y., on the brief), for plaintiff-appellee.

Before MOORE, TIMBERS and VAN GRAAFEILAND, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Cargo Export Corporation (Cargo), a freight forwarding company, appeals from a $216,045.00 judgment of the United States District Court for the Eastern District of New York entered pursuant to Judge Sifton's order granting the Government's motion for summary judgment. The

judgment represents the refund of freight charges wrongfully collected by Cargo for an overseas shipment of goods. We affirm.

Because a large American merchant fleet is considered essential for national defense and the assured carriage of American goods, the United States has for many years encouraged the movement of Government-sponsored exports in American ships. *Alcoa Steamship Co. v. Federal Maritime Commission*, 321 F.2d 756, 758 (D.C.Cir. 1963). Almost a half century ago, the "sense of Congress" was declared to be that exports fostered by Government loans should be carried exclusively in American ships except where the Shipping Board Bureau certified that such ships were unavailable. Public Resolution No. 17, H.R.J.Res. 17, 73d Cong., 2d Sess. (1934). The substance of this Resolution is now codified at 46 U.S.C. § 1241–1.

The Agency for International Development (AID), created by the Act for International Development of 1961, Pub.L.No.87–195, 75 Stat. 424, (current version at 22 U.S.C. § 2151 *et seq.*), was exempted from the provisions of the Resolution by section 633 of the Act, 22 U.S.C. § 2393, and Executive Order No. 11,223, 30 C.F.R. 6635 (1935), issued pursuant thereto. Despite this exemption, AID regulates and monitors the overseas shipment of goods under the Act in order to further the purposes of both the Resolution and the Act. *See, e.g.*, 22 C.F.R. §§ 201.13, 201.15, 201.32, 201.71. This litigation arose out of the failure of Cargo to comply with AID requirements for a shipment of foreign goods to Bangladesh.

■ In 1977, the United States, through AID, was financing the construction of a plant for Ashuganj Fertilizer and Chemical Co. at Dacca, Bangladesh. A $7M credit, backed by an AID letter of commitment, was established at Manufacturers Hanover Trust Company in favor of Foster Wheeler Ltd., the general construction contractor. Foster Wheeler transferred to Cargo the right to draw $617,000 against this credit, the draws to be used to cover shipping expenses.

The AID letter of commitment, the letter of credit in favor of Foster Wheeler, and the limited letter of credit in favor of Cargo all provided that transportation costs would be paid only if shipment was made in a vessel bearing the flag of a country falling under AID Geographic Code 941. Code 941 specifically excluded the "cooperating country", in this case Bangladesh.[1] The Supplier's Certificate and Agreement, which AID required from all deliverers of commodity related services such as shipping, 22 C.F.R. § 201.01(i), (*l*), (r), (s) (1981), provided that the supplier (Cargo) would make appropriate refund to AID if it breached its Certificate and Agreement or made a false representation therein. Because the facts show beyond dispute that Cargo did both, Judge Sifton correctly granted the Government's motion for summary judgment.

Cargo made arrangements for the shipment through Intermodal Container Service Ltd., a non-vessel-owning carrier representing Bangladesh Shipping Corporation. Cargo drew down $216,045.00 against its letter of credit and paid this amount to Intermodal. The goods were shipped on the S. S. Banglar Maan, a Bangladesh ship, and the actual freight charges were $119,526.75. However, Intermodal failed to transmit even this amount to the Bangladesh Shipping Corporation, and Ashuganj Fertilizer and Chemical Co. was required to pay the freight bill in order to secure delivery of the goods. Cargo stated in its Supplier's Certificate that the S. S. Banglar Maan was a United States registry ship and that the total freight charges were $216,045.00. On the basis of the foregoing facts, the United States clearly was entitled to a refund of

1. Geographic Code 941 was defined as "[a]ny independent country in the Free World, except Algeria, Andorra, Australia, Austria, Belgium, West Berlin, Canada, Congo (Brazzaville), Cyprus, Denmark, Finland, France, West Germany, Greece, Hong Kong, Iceland, Iraq, Ireland, Italy, Japan, Kuwait, Libya, Liechtenstein, Luxembourg, Malta, Monaco, Netherlands, New Zealand, Norway, Portugal, Qatar, Saudi Arabia, Southern Rhodesia, San Marino, Somali Republic, South Africa, Spain, Sweden, Switzerland, United Arab Emirates, United Kingdom, Vatican City, South Yemen, Yugoslavia, and the cooperating country itself."

the full amount of Cargo's wrongful draw. *United States v. Waterman Steamship Corp.*, 471 F.2d 186, 188–89 (5th Cir. 1973); *United States v. Framen Steel Supply Co.*, 435 F.Supp. 681, 684–85 (S.D.N.Y.1977).

We find no merit in Cargo's argument that the district court improperly disregarded an amendment of AID's regulations. Following the issuance of the commitment to Manufacturers Hanover Trust Company and the letters of credit to Foster Wheeler and Cargo, AID modified its regulations to permit Geographic Code 941 shipments to be made in vessels of the cooperating country, and this amendment preceded the shipment at issue herein. However, in a letter addressed to all banks holding AID letters of commitment, AID made it clear that the change was not intended to modify preexisting commitments or letters of credit, such as those involved herein. The district court properly looked to AID's construction of its own amendment in holding the amended regulation inapplicable. *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 413–14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). In any event, the amendment did not purport to relieve shippers of their obligation to make no false representations in their Supplier's Certificates and Agreements, such as those that were made by Cargo.

Cargo's final argument that AID's recovery should be limited to the damages it sustained from Cargo's use of a Bangladesh ship is equally without merit. Predicating recovery on damages rather than the refund of freight would distort the very concept of cargo preference, which looks to nationality, not economies of carriage.

Concluding that the grant of summary judgment was proper, we affirm.