CLARK v. FOSS. See Case No. 2,852.

CLARK (GARRETSON v.). See Cases Nos. 5,248–5,250.

## Case No. 2,821.

CLARK et al. v. GIBBONEY et al.

[3 Hughes, 391.][1]

Circuit Court, W. D. Virginia. June 3, 1879.

Res Judicata — Assignment for Benefit of Creditors—Waiver of Benefit — Breach of Trust — Allowance of Confiscation by Assignee.

1. In a suit brought to enforce payment of a debt secured by an assignment out of a trustee's estate on the ground of breach of trust, held, that a former suit is invalid as a plea of res judicata, unless the record shows that the same subject-matter was involved and the same questions raised, or so involved in the main object of the controversy as to spring necessarily therefrom.

2. A suit on the note secured by an assignment, never prosecuted to final judgment, is not a waiver of the benefit of the assignment.

3. Payment of a debt by a trustee to a receiver under a confiscation decree of a Confederate court is a breach of trust for which the estate of the trustee is liable.

In equity. The general facts of this case are the same as those in the preceding case

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

of Dorr v. Gibboney's Ex'x [Case No. 4,006], except that there was no attachment suit in this case. Besides this, Clark, Dodge & Co. had brought suit on the note, but had never prosecuted it to final judgment, and it had been dismissed at the beginning of the war. The defendants claimed that this was a waiver of the benefit of the assignment. They also filed the record in the case of Preston v. Stuart, reported in 29 Grat. 289, in which case Clark, Dodge & Co. had been made nominal parties defendant, and attempted to use it as a plea of res judicata. These were the only additional questions raised.

James H. Gilmore and Robert M. Hughes, for the complainant, cited New England Bank v. Lewis, 8 Pick. 113: Coverdale v. Wilder, 17 Pick. 178; Skipwith v. Cunningham, 8 Leigh, 271; Clark v. Ward, 12 Grat. 440.

Joseph W. Caldwell, for Gibboney's executrix.

Johnston and Trigg, for Stuart & Palmer.

RIVES, District Judge. An estoppel by a former adjudication is pleaded in bar of this suit. It is alleged that this adjudication was had in the suit of Preston v. Stuart [29 Grat. 289], to which these complainants were nominally defendants. These complainants were parties, because secured by the assignment of 7th July, 1859; but no question was thereon raised or could have been adjudicated under the allegations of the bill as to the claim now preferred by the complainants. This suit was because of alleged frauds of the trustee constituting grounds on which his acts were assailed; and his sale to Palmer, Stuart & Parker of 10th June, 1862, under and by virtue of said assignment, was specially sought to be rescinded. Instead of the object of this suit being involved in the former, and barred thereby, it actually grows out of it, and is wholly consistent with its pretensions. Reference is had to this suit of Preston's for the evidence thereby afforded of the credit taken to himself for the payment of this debt by Gibboney, the trustee. With the main purpose of the controversy between Preston and his trustee, and the purchasers from the trustee, these plaintiffs had no connection; their claim is outside of that suit; in no wise conflicting with it; but, on the contrary, consistent therewith, and based thereon. An inspection of that voluminous record, is sufficient to snow the inapplicability and invalidity of this estoppel; so this plea, if not already received, should be overruled, or otherwise refused. For yet a stronger reason, the ex parte settlement of accounts by the trustee is no bar to a recovery in this case. The creditors in this suit need not to have assented to this assignment for their benefit. Their assent will be presumed.

They can now be only deprived of it by some act of theirs so clearly inconsistent therewith as to constitute a waiver of it. The depositions of William Gibboney and his counsel are relied on as express waivers. They prove only an instruction of the creditors to their agent and counsel to sue for and press the collection of their debt at law; and not to wait upon the execution of the assignment for their benefit. This they had a perfect right to do; they were not restricted to the deed, and did not lose the benefit thereof by a resort to a suit on this note. They could concurrently proceed with both remedies. It is only when the creditor does some act or takes some step clearly indicating an abandonment of the deed for his protection, that he will be taken as waiving it. This doctrine of waiver is a reasonable one; and is not applicable to the state of facts relied on by the executrix of Gibboney. This suit, and its dismissal under the circumstances of this case, cannot be tortured by any ingenuity into a renunciation of the benefits of this assignment.

The disposal of these preliminary objections to a recovery in this case brings us to the consideration of the merits of the controversy. It seems now conceded in the argument that the plaintiffs cannot be affected by the judicial sequestration of their debt. It was a nullity, and must be so regarded by this court upon reason and authority. Such a belligerent act is in its nature contingent; it must depend upon the success of the rebellion, in whose behalf it was enacted, and it must perish with the victory of the nation over its rebellious subjects. The question, then, reverts to one of liability as between the defendants to the original bill. To settle this the cross-bill was allowed; and under that, and the answers and pleading thereto, will this question be now considered and determined. It is conceded that this debt, thus illegally discharged and sequestrated, was the debt of the defendant Preston. He, however, had provided for it by his deed of assignment of 7th July, 1859. Gibboney united in that deed, and thereby undertook its execution. In pursuance thereof he chose to receive payment thereof, and take credit on his account of the trust estate therefor. Was not this an acquittal of the grantor? Can the credit inure to the trustee, and as between grantor and trustee be allowed to the latter, and still be claimed, as between them, of the grantor as a subsisting demand upon him? Surely not; he cannot have this credit and claim against it at the same time; the act of taking the credit in his settlement with the grantor acquits and discharges the latter, and the trustee cannot be allowed to repudiate his act when he has received the benefit of it. As between Preston and Gibboney the matter is finally and definitely settled; but otherwise as between these two and the creditors; but in consideration of the equities between the

two former, the creditor's resort should be primary against Gibboney and secondary against Preston in the event of Gibboney's insolvency. This view, doubtless, accounts for the failure of the defendant Preston to answer. He thus confesses his eventual liability, and doubtless has no fear of it.

The liability of Palmer & Stuart rests upon the mistaken declaration that they had assumed to pay such debts as were to be postponed because of the refusal to receive currency. There was no such understanding on their part. The provision is quite different, and is as follows: "It is further agreed and distinctly understood that in the event said Gibboney shall be unable to pay off the creditors of said Thomas L. Preston with the funds paid by said purchasers, in consequence of the refusal of said creditors or any of them to receive the money in payment, that then the said parties of the second part shall substitute their notes for the amount so refused, secured to the satisfaction of said Gibboney in notes, for equal instalments, payable in 1, 2, 3, 4, and 5 years from first July next, or sooner if the parties of the second part shall elect so to do, with interest on same from first July next, and interest on the whole amount, payable annually." It is clear from this quotation, therefore, that so far from its being true, as alleged, that these purchasers agreed to pay these deferred debts, it was incumbent on Gibboney, when unable to use current funds, to defer the payment through five years, if agreeable to the purchasers, so as to secure for such creditors a satisfactory medium of payment. Neither was there any obligation on the part of the vendees to see to the application of the purchase-money. The effect of the deed of assignment was to interpose for the discharge of the debts secured, a trustee whose acquittance or receipt should be all that the purchasers could require to discharge them of liability. It would be, therefore, to defeat the plain provisions of the assignment, and its manifest intent to deny Palmer & Stuart in this case the protection of the trustee's receipt for this debt, and his acquittance therefor. I cannot, therefore, think that they can in any event be held liable for the malversation of the trustee in turning over this debt to the hands of the Confederate receiver. Singular infidelity attended the agencies employed by these foreign creditors. One of their attorneys was William Gibboney, also a Confederate receiver, who, as his deposition shows, claimed this fund, and apparently gave up his claim upon the allowance of his commission of $120.85, being five per cent. on the amount of $2,417 paid Receiver Johnston, and upon the receipt of liberal fees by him and his associate. Truly, it might be said of this transaction, it was verily "quasi agnum committere lupo "

To ascertain the liability of Gibboney, let us reproduce the credit he takes to himself in his settlement of accounts in the Preston suit against him. It is as follows:

"73. Clark, Dodge & Co. v. W. K. Heiskell, acceptor, and Thomas L. Preston, on an acceptance due March 21st. 1859.. $2,017 05 Interest to July 12th, 1862.... 400 38

$2,417 43

"Received of Robert Gibboney, trustee of Thomas L. Preston, the sum of $2417.43 cents, according to the above statement, which debt was due from Thomas L. Preston, and recognized as such in his deed of trust to said Gibboney, and so paid me under the sequestration law as receiver for Washington county, the said Clark, Dodge & Co. having domicil in the state of New York. John W. Johnston, Receiver for Washington County. July 12, 1862."

In exhibit (Z), being trustee's settlement before Commissioner H. S. Mathews, under date of 4th November, 1862, Gibboney takes credit to himself, under date of July, 1862, as follows: "By amount paid John W. Johnston, receiver, $2417.43." The identity of the sum proves beyond all doubt the identity of the item. See exhibits of Thomas L. Preston, p. 105. This is indubitable documentary proof, that Gibboney, as trustee, has received credit for this payment to the receiver. Where now is the proof that he made this wrongful payment under any species of duress whatever? The language of his receipt sets out the domicil of Clark, Dodge & Co. as in New York; the suit being brought in the United States court, evidenced the jurisdictional fact that these suitors resided in another state; and I have no doubt that that residence was, under the proofs in this cause, known by Gibboney to be in New York. Hence, he was aware of his duty in behalf of these cestui que trusts, to refuse to receive this debt, and under the terms of this deed, to demand in its stead a note or notes at such time as would probably outlast the Rebellion. Did he, in good faith, such as is exacted of a fiduciary under these circumstances. seek in the mode thus provided by the deed to tide this debt over the war, and protect these loyal citizens in their just claims? He surely had the opportunity and authority to do so; but no proof is offered of any attempt on his part thus to protect these residents of a loyal state in their rightful dues during the Rebellion. On the contrary he seems to have seized with impatience and haste this opportunity of signalizing his fealty to the insurrectionary tribunals of the revolted states, and of acquiring cheaply and at the expense of those whom he should have protected and not betrayed, a reputation for a flaming, superserviceable zeal in these ungracious, if not vengeful, tasks of confiscation. While I acknowledge the favor shown by the courts to fiduciaries in the honest and well-meant, though mistaken. discharge of their duties, I cannot but regard

the voluntary participation of the trustee in this lawless act of sequestration under the proofs in this cause, as a reprehensible breach of trust, properly entailing upon his estate, the recovery sought of it in this cause. Whatever relief he may be entitled to from his confederates in this wrong-doing, must be sought in another action and before another tribunal. I am clear, neither his grantor nor his vendees can be required to indemnify him for this wrongful and void payment to the Confederate receiver.

Hence, a decree must be entered in the original suit for the plaintiff's debt, and interest and costs, with a reservation of their right to charge the estate of Preston in the hands of his present trustee, if the execution de bonis testatoris in this case should prove fruitless, and the cross-bill of Gibboney's testatrix must be dismissed with costs.