**Richard C. RASHID, M.D. and Medical Leasing and Supply Company, Plaintiffs,**

v.

**UNITED STATES of America, et al., Defendants.**

No. CIV. A. 2:01–0181.

United States District Court, S.D. West Virginia, Charleston Division.

Oct. 19, 2001.

Jeffrey V. Mehalic, Law Offices of Jeffrey V. Mehalic, Charleston, for Plaintiffs.

Alan E. Reider, Breckinridge L. Willcox, Arent Fox Kintner Plotkin & Kahn, P.L.L.C., Washinton, D.C., for Plaintiffs.

The Honorable John Ashcroft, Attorney General for the United States of America, Office of the Attorney General, Department of Justice, Washington, D.C., for Defendant United States Attorney's Office.

Charles R. Bailey, Bailey & Wyant, P.L.L.C., Charleston, for Defendant West Virginia Department of Health and Human Resources.

## MEMORANDUM OPINION AND JUDGMENT ORDER

GOODWIN, District Judge.

Pending before the court are motions by the United States of America, the United States Department of Justice, the United States Attorney's Office for the Southern District of West Virginia, the United States Department of Health and Human Services and the Railroad Retirement Board ("federal defendants") and by the West Virginia Department of Health and Human Resources to dismiss pursuant to *Fed.R.Civ.P.* 12(b)(1) & (6). Because it appears from the papers, affidavits, and other proofs that there is no disputed issue of material fact and that judgment for the moving parties is appropriate as a matter of law, the plaintiffs' complaint is hereby **DISMISSED** with prejudice.

## I.

### Standard of Review

All defendants have submitted motions to dismiss pursuant to *Fed.R.Civ.P.* 12(b)(1) & (6). The parties have presented matters to the court that go beyond the pleadings in this case. Therefore, the court will treat this action as one for summary judgment pursuant to *Fed.R.Civ.P.* 56(c). *See Fed. R. Civ. P.* 12(c). As such, the court "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *See Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In so doing, the court will view the evidence and draw any possible inference from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The parties have fully briefed these issues, and the court rules upon them as a matter of law.

## II.

### Background

In 1993, various federal and state agencies investigated Dr. Richard Rashid [1] for medicaid/medicare fraud. In 1994, Assistant United States Attorney Charles Miller, Director of Health Care Administra-

---

1. Both Rashid and his company, Medical Leasing Supply, Inc. bring this action together; they are referred to collectively herein as "Rashid."

tive Sanctions James Patton, plaintiffs' counsel David Higgins and Rashid and signed a settlement agreement whereby Rashid would avoid state and federal prosecution in exchange for (1) his agreeing to be excluded for 10 years (beginning January 1, 1995) from all programs identified in 42 C.F.R. § 1001.1901; (2) his posting public notice of same; and (3) a lump sum payment to "the Government"[2] of $1,250,-000.000 upon execution of the agreement. The agreement contained no signature line for the West Virginia Department of Health and Human Services ("DHHR"), but the agreement's first paragraph listed the DHHR as a party, and it is undisputed that Assistant United States Attorney Charles Miller, who signed for the United States, represented to Rashid that he had the authority to bind the DHHR to the agreement.

The Health Care Administrative Sanctions Office of Investigations was required by law to send notices of this settlement agreement to various agencies, including the West Virginia Board of Medicine ("the Board"). Copies of these notices were attached to the settlement agreement and incorporated therein by reference. (Settlement Agr. at 10, ¶ 1.) The notice to the Board of Medicine referenced Section 1128(e) of the Social Security Act and its requirement that the Board be notified of Rashid's exclusion from the relevant programs, as well as its requirement that the Board be requested to make appropriate investigations and invoke sanctions in accordance with state law and policy. (Settlement Agr. Exhibit E.) The notice specifically requested the Board of Medicine to take such action. (Settlement Agr. Exhibit E.) The United States Attorney's Office promised to make no recommendation with

regard to this action. (Settlement Agr. at 13 ¶ 11 ("[t]he Office of the United States Attorney agrees to make no recommendation concerning action to be taken, if any, by licensing boards, hospitals or certifying organizations.").)

After receiving this notice, the Board initiated a formal administrative proceeding against Rashid on July 15, 1996, to determine whether it should take disciplinary action against his license to practice medicine and surgery in West Virginia. Pursuant to Section 1128(e) of the Social Security Act, the first count of the complaint was based on Rashid's entering into the settlement agreement, which provided for his exclusion from participation in the programs referenced in the notice. The Board contended that the exclusion indicated a violation of the law and thus constituted "unprofessional, unethical, and dishonorable conduct."

On September 16, 1996, Rashid sought to enjoin the Board's administrative procedure against him in the Circuit Court of Kanawha County. He argued that because the Board was a part of the DHHR, the 1994 settlement agreement prohibited it from taking further action against him regarding matters giving rise to that agreement.

In support of his argument that the DHHR was bound by the settlement agreement, Rashid called Assistant United States Attorney Charles Miller. According to Mr. Miller, the United States Attorney's Office had provided a copy of the settlement agreement to the counsel for the state Medicaid Fraud Control Unit, who approved it. (Mem. of the United States in Support of its Mot. to Dismiss at 6).

---

2. The settlement agreement refers to all state and federal government entities collectively as "the Government."

The Board argued that it was not a part of the DHHR, and that even if it were, the DHHR had not agreed to be bound by the settlement agreement. In support of its position, the Board presented an affidavit from then DHHR Secretary Gretchen Lewis stating that she alone had the authority to bind the DHHR, that she had not authorized anyone to sign the settlement on behalf of the DHHR, and denying any knowledge of the settlement agreement.

The Kanawha County Circuit Court held that because the DHHR had neither signed the agreement nor authorized anyone to sign it on its behalf, the DHHR was not a party to the agreement. The court did not address whether the Board of Medicine was a part of the DHHR. On April 7, 1997, approximately one month after the court entered its Order, the DHHR's new director, Joan Ohl, signed an affidavit agreeing to be bound by the agreement, with the express understanding that the Board was not part of the DHHR. Both the United States and the DHHR now characterize this as a ratification. Rashid characterizes it as an attempt at modification without consideration.

Even after the Kanawha County Circuit Court decided that the DHHR was not a party to the settlement, the DHHR still took no action whatsoever against Rashid either before or after Secretary Ohl signed her affidavit. Moreover, regardless of the Board's relationship (if any) to the DHHR, the Board no longer has any action pending against Rashid. On July 6, 2001, approximately four months after Rashid filed this suit, the Board of Medicine voted to dismiss its petition against him.

Rashid now claims that if he had known the DHHR would not be a party to the agreement, he would not have entered into it. He therefore asks this court to declare the agreement null and void *ab initio* and to return the parties to the *status quo ante*. He requests the return of the 1.25 million dollars he gave as consideration for non-prosecution, a reinstatement into all programs from which the agreement excluded him, and a reimbursement for the sale of his four percent interest in the Surgery Center.[3] Although Rashid has known since 1997 that the DHHR was not bound by the agreement, he did not repudiate it until the statute of limitations had expired on all of the statutes that the settlement avoided. Thus, he did not seek relief until the passage of time had rendered him invulnerable to civil or criminal liability.

In all of the years since the agreement was signed, none of the defendants has ever taken any civil or criminal action against Rashid. Even the Board of Medicine has dropped its administrative action against him. Thus, the federal defendants have fully performed, as has the DHHR. Rashid has gotten the benefit of his bargain, yet he asks this court to restore the parties to the condition they were in before the bargain. In the *status quo ante*, Rashid was 1.25 million dollars richer and enjoyed the fruits of federally funded pro-

---

**3.** Rashid claims (without any discernable support in the record) that the agreement specifically approved of Rashid maintaining a four percent interest in the Surgery Center. However, between March 22, 1995 and December 6, 1995 the Bureau of Medical Services, a division of DHHR, denied payment to the Surgery Center on the basis that it was owned in part by Rashid. Because of this refusal, Rashid was forced to sell his four percent share so that the Surgery Center could obtain a new medicaid billing number. Nothing whatsoever in the agreement remotely relates to allowing Rashid to maintain his share in the Surgery Center. Therefore, the court does not herein entertain any prayer for relief relating to this aspect of Rashid's complaint.

grams. But he was also the target of joint federal and state investigations and subject to legal actions that the defendants are now powerless to bring.

## III.

### Analysis

Before reaching the merits of this case, the court first must determine whether subject matter jurisdiction exists, and whether there is a valid waiver of sovereign immunity.

### A. Subject Matter Jurisdiction

The federal defendants argue that Rashid has not established a basis for subject matter jurisdiction. In considering the defendants' motions to dismiss for lack of subject matter jurisdiction pursuant to *Fed.R.Civ.P.* 12(b)(1), a court must apply the standard applicable to a motion for summary judgment. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765 (4th Cir.1991), *cert. denied*, 503 U.S. 984, 112 S.Ct. 1667, 118 L.Ed.2d 388 (1992); *Johnson v. United States*, 906 F.Supp. 1100 (S.D.W.Va. 1995). Under this standard, the nonmoving party must set forth specific facts beyond the pleadings that are based upon more than "mere speculation or the building of one inference upon another." *Harleysville Mut. Ins. Co. v. Packer*, 60 F.3d 1116, 1119–20 (4th Cir.1995) (citations omitted). Plaintiffs bear the burden of establishing subject matter jurisdiction and thus are charged with bringing forth sufficient admissible evidence to support their claims. *See McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Adams v. Bain*, 697 F.2d 1213 (4th Cir.1982).

Rashid takes a shotgun approach to jurisdiction. As bases for subject matter jurisdiction, he lists mandamus, declaratory judgment, the Administrative Procedures Act ("APA"), federal question, and supplemental jurisdiction.[4] Of these possibilities, only federal question jurisdiction in connection with the APA merits discussion.

■ In appropriate cases, the APA allows plaintiffs to seek redress for the acts of federal governmental agencies that cause them legal harm. *See* Administrative Procedures Act, 5 U.S.C. § 702 (1994). The APA does not provide an independent jurisdictional basis, but merely prescribes the standards for reviewing an agency action once jurisdiction is otherwise established. *See Califano v. Sanders*, 430 U.S. 99, 107, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Where the APA is properly invoked, 28 U.S.C. § 1331 can provide this independent basis. *See Califano*, 430 U.S. at 105–06, 97 S.Ct. 980 (finding that the effect of Congress's amendment of section 1331 was to confer jurisdiction on federal courts to review agency action, "regardless of whether the APA of its own force [might] serve as a jurisdictional predicate"); *see also Bowen v. Massachusetts*, 487 U.S. 879, 891 n. 16, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) ("If review is proper under the APA, the district court ha[s] jurisdiction under 28 U.S.C. § 1331.").

The federal defendants argue that the APA does not apply to Rashid's claim for two reasons. First, they cite the APA's prohibition on the award of money damages and assert that Rashid's prayer for 1.25 million dollars bars application of the APA. Second, they argue that this case

---

4. Mandamus, declaratory judgment, and the APA all require an independent jurisdictional basis.

falls under the Tucker Act, which prohibits equitable relief and therefore precludes application of the APA. Both arguments are without merit.

Rashid seeks 1.25 million dollars not as money damages, but as the return of the consideration he provided. A suit seeking equitable monetary relief is not precluded by the APA. *Bowen,* 487 U.S. at 893, 108 S.Ct. 2722 (recognizing the distinction between an action for damages and an equitable action for specific relief, which may include an order providing for recovery of specific property or monies). Some of the relief Rashid seeks, such as reinstatement into government programs, is clearly equitable. The court also views his prayer for 1.25 million dollars as a request for equitable monetary relief. Therefore, the APA may still apply.

■ Furthermore, the Tucker Act does not apply here. The Tucker Act waives sovereign immunity and vests the Federal Claims Court with jurisdiction over express or implied contracts with the United States. 28 U.S.C. § 1491 (1988). Defendants characterize Rashid's claims as ones arising from contract. Rashid is making claims not based on a breach of the settlement agreement, however, but on the fact that he did not agree to the contract in the first place. *See* Pl. Mem. in Opposition to Def. United States' Mot. to Strike and Reply at 4–5 (explaining that he "is not seeking to enforce the [a]greement or to obtain damages for its breach" and that his claim is "not about a breach of contract."). Therefore, this claim is not one

founded on a contract with the United States, and the Tucker Act cannot apply.[5]

The court finds that the APA does apply. In conjunction with 28 U .S.C. § 1331, the APA provides Rashid with subject matter jurisdiction for his claim.

### B. Sovereign Immunity

■ The second hurdle to Rashid's claim is sovereign immunity. The United States is generally immune from suit, and cannot be sued without its consent. *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). Only Congress has the authority to determine what circumstances justify such a waiver. *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).

Section 702 of the APA provides such a waiver where a plaintiff is suing an agency for non-monetary relief. *See Presbyterian Church v. United States,* 870 F.2d 518, 525 (9th Cir.1989) (finding that section 702 is an unqualified waiver of sovereign immunity in all actions seeking nonmonetary relief against legal wrongs for which governmental agencies are accountable, and not just for "agency action" as defined by 5 U.S.C. § 551(13)); *Clark v. Library of Congress,* 750 F.2d 89, 102 (D.C. Cir.1984) ("With respect to claims for non-monetary relief, the 1976 amendments to § 702 ... eliminated the sovereign immunity defense in virtually all actions for non-monetary relief against a U.S. agency ·or officer acting in an official capacity."). The Department of Justice ("DOJ") is an agency whose actions are amenable to review under the APA. *See Olmstead v. L.C. by Zimring,* 527 U.S.

---

**5.** Note that even if the court were to construe Rashid's claim as one based in contract, the Tucker Act would not apply because an agreement by the federal government not to prosecute is not the type of contract contemplated by the Tucker Act. *See Sadeghi v. United States,* 46 Fed. Cl. 660, 662–63 (2000) ("The contract liability over which the [Claims

Court] has been granted jurisdiction does not extend to every situation in which the government may be said to have entered into an agreement .... [The Claims Court] has consistently found it lacks jurisdiction over suits ·asserting the breach of plea bargains, immunity agreements, and witness protection agreements.").

581, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999); *United States v. McNeal,* 221 F.3d 1336, 2000 WL 924588 at *1 (6th Cir. June 28, 2000) (unpublished); *Walker v. Reno,* 925 F.Supp. 124, 126 (N.D.N.Y.1995).

In this suit, Rashid seeks to redress the actions of the United States Attorney's Office in exceeding its authority when purporting to bind the DHHR to the settlement agreement. As previously discussed, the 1.25 million Rashid seeks is not money damages, but equitable relief. Therefore, the court finds that section 702 provides the requisite waiver of sovereign immunity.

## C. Merits of the Case

■ Having found both a basis for subject matter jurisdiction and a waiver of sovereign immunity, the court now turns to the merits of Rashid's claim. A party seeking review of an agency action under section 702 must demonstrate that he has suffered legal wrong because of the challenged action, or is adversely affected or aggrieved by that action within the meaning of a relevant statute. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 883, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

Plaintiff alleges the United States Attorney's Office was acting outside its authority when it represented to Rashid that it could bind the DHHR to the settlement agreement. Defendants have admitted this unauthorized act. *See Def. Mem. in Support of Mot. to Dismiss* . Rashid has failed to demonstrate, however, that he has suffered any injury as a result of Miller's unauthorized act. His complaint states that he "expected that the terms of the

[s]ettlement [a]greement would be given their full effect and that they would be fully released and discharged from any and all state and federal claims." Pl. Comp. ¶ 42. Rashid complains that he would not have entered into the agreement had he known the DHHR would not be bound by it. He has suffered no harm, however, since the DHHR proceeded exactly as though it were bound by the agreement. It never prosecuted Rashid, and he received the full benefit of his bargain.[6]

It would be impossible for the court to restore the parties to the status quo ante. Before entering the settlement agreement, Rashid was 1.25 million dollars richer and enjoyed the fruits of federally funded programs. The court could restore him to this position. But he was also the target of joint federal and state investigations. At this point, the running of statutes of limitations preclude defendants from prosecuting him. It is therefore impossible for the court to fully return all parties to their original positions. Providing Rashid with the requested relief would allow him to avoid prosecution without him giving up anything in exchange.

The court notes Rashid may have had legitimate grounds for repudiating the contract when he first became aware that the DHHR was not bound by the agreement, because the applicable statutes of limitation had not yet run. Thus, when the Kanawha County Circuit Court found that the DHHR was not bound by the agreement, Rashid was indeed vulnerable to DHHR action. However, Rashid waited to

---

6. Only the Board of Medicine's now defunct petition against Rashid can arguably be viewed as an injury. Yet Rashid specifically rejects the petition as a basis for relief. *See* P. Opp. Mem. at 4 n. 1. Moreover, the Board withdrew the petition, and the settlement agreement itself cannot be construed as preventing the Board from filing the petition in the first place. By asking the United States to promise to make no recommendation with regard to Board action, Rashid himself clearly evinced knowledge that the agreement would not insulate him from such action by the Board.

bring any action until after the statutes of limitation had run and he emerged invulnerable to prosecution (just as he had originally bargained).

Once a party has received the benefit of his bargain, he cannot avoid that bargain, especially where he has remained silent long after the reason for doing so has become known to him. *See United States v. Seaboard Air Line Ry. Co.*, 22 F.2d 113, 116 (4th Cir.1927) ("We know of no principle of law under which the government, after receiving the benefits of the contract into which it has lawfully entered, can repudiate the conditions upon which the contract was made."); *Clark v. Gibboney*, 5 F. Cas. 869, 870 (W.D.Va.1879) ("[T]he trustee cannot be allowed to repudiate his act when he has received the benefit of it."); *see also Sec. Underground Storage, Inc. v. Anderson*, 347 F.2d 964, 968 (10th Cir.1965) ("If a party to a contract remains silent as to a claimed invalidity of a contract and continues to treat property as his own which was the subject of the contract, he will be deemed to have waived his objection and will be bound by the instrument."); In re *Gringeri Bros. Trans. Co., Inc.*, 14 B.R. 396 (D. Mass. 1981) ("Having thus accepted, at least partially, the benefits of its contracts for the sale of the trailers, Fruehauf may not here be heard to deny the existence or validity of such contracts."); 17A *Am.Jur.*2d Contracts § 214.

Therefore, the court finds that the plaintiff suffered no legal wrong. Despite the United States Attorney's Office acting beyond the scope of its authority, Rashid has received the full benefit of that for which he bargained.

## IV.

### Conclusion

For the reasons discussed, the court **FINDS** that plaintiffs have presented no issue of material fact for trial. The court therefore **GRANTS** the motion of the United States of America, the United States Department of Justice, the United States Attorney's Office for the Southern District of West Virginia, the United State Department of Health and Human Services and the Railroad Retirement Board to dismiss pursuant to *Fed.R.Civ.P.* 12(b)(6) and **DENIES** their motion to dismiss pursuant to *Fed.R.Civ.P.* 12(b)(1). The court orders plaintiffs' complaint to be **DISMISSED** with prejudice. Any remaining motions are **DENIED** as moot.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party, and to publish the same on the court's website at www.wvsd.uscourts.gov.